**LONDON TOWNE HOMEOWNERS ASSOCIATION**

v.

**William H. KARR, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 29, 2004.

Decided Dec. 15, 2004.

Clarification and Reconsideration Denied Feb. 17, 2005.

. Timothy G. Wojton, Pittsburgh, for appellant.

Christina E. McKaveney, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

William H. Karr (Karr) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that denied Karr's petition to strike an assessment lien

on his property. In this appeal we consider whether a planned community, which has a recorded and perfected lien against all units in the community for unpaid assessments, must file a second lien in order to enforce its assessment against one of those unit owners.

Karr resides at 239 London Towne Drive, Pittsburgh, which is a unit in a planned community,[1] known as "London Towne," created under the Uniform Planned Community Act, 68 Pa.C.S. §§ 5101–5114(Act). When Karr purchased his home, he automatically became a member of the London Towne Homeowners Association (Association).[2] The Association has broad responsibility for maintaining and administering the planned community. Bylaws of London Towne Homeowners Association, Article II, Section 2.2, Reproduced Record at 28a–29a (R.R. ——). Accordingly, the Association enforces certain covenants, conditions, and restrictions that are contained in a Declaration of Covenants, Conditions, and Restrictions (Declaration) established on June 14, 1979. These covenants require owners to maintain certain architectural standards with respect to the appearance and condition of their homes, to pay assessments for the maintenance of common areas and to pay special assessments, i.e., fines, for deviating from London Towne's architectural standards.

1. A planned community is defined in relevant part as:
 Real estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person. The term excludes a coopera-

 tive and a condominium, but a condominium or cooperative may be part of a planned community. For purposes of this definition, "ownership" includes holding a leasehold interest of more than 20 years, including renewal options, in real estate.
 68 Pa.C.S. § 5103.

2. The Association is organized as a member non-profit corporation pursuant to the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 5101–5997.

On October 4, 1999, the Association's Judicial Committee convened a hearing to consider a complaint filed by the Association's Architectural Committee. The complaint alleged that Karr made changes to the pediment and front door of his home without the prior approval of the Board of Directors or of the Architectural Committee. Karr did not appear at this hearing. Accordingly, the Judicial Committee deemed the allegations uncontested, and it assessed Karr a fine of $25 for each day the violation continued, *i.e.*, until remedied. Karr did not arbitrate the Judicial Committee's decision, as was his right under the Declaration.[3]

On July 24, 2003, the Judicial Committee convened another hearing to consider a new complaint filed against Karr. This complaint alleged that Karr had erected two impermissible fences. The first was located in the front corner of his property, and the second, a wrought iron fence, was erected in Karr's backyard. In advance of this hearing, the Association sent a letter to Karr warning that his failure to attend the hearing "will be interpreted as your guilt in the matter." R.R. 66a. Karr did not appear, and the Judicial Committee found him "guilty," assessing a fine for each day of the continuing violating. Karr did not appeal the Judicial Committee's decision by seeking arbitration.

On October 10, 2003, Karr instituted a declaratory judgment action "to determine the validity of the assessments and fines imposed by the Association." Complaint at ¶ 10. Karr's Complaint challenges the Association's fines as lacking any basis in law or in fact. It asserts that a unit's front door and pediment are beyond the Association's governance and that the changes to his door improved "the aesthetic look of the unit." Complaint at ¶ 25. In any case, the change was approved because the Association failed to act within 30 days of his request for approval of the change, as set forth in Article VII of the Declaration. The Complaint also avers that the complained-of front yard "fence" is a rose arbor and not "a fence in any common sense definition of the word;" further, flower bed maintenance is the responsibility of the unit owner. Complaint at ¶ 12. Finally, the Complaint avers that Karr never erected, or placed in the ground, a wrought iron fence at the rear of his unit. A wrought iron railing had been removed from the interior of Karr's home and was simply leaning against the wooden fence at the rear of his unit. Complaint at ¶ 21. The railing was removed once Karr learned that it was considered offensive. The Complaint describes the Association as a "repressive" organization that has subjected Karr to harassment on matters of *de minimis* importance, leaving him quite desirous to leave London Towne. To do so, the Association's claim for $34,900 in fines must be resolved in order for Karr to sell his home.

The Association responded promptly to Karr's declaratory judgment action. On October 22, 2003, it filed a "Homeowners Association Lien" on Karr's property with the Allegheny County Prothonotary in the amount of $34,900. The lien covered unpaid fines as of July 30, 2003, plus counsel fees. Karr responded by filing a Petition to Strike the Homeowners Association Lien and Stay Proceedings.

Following oral argument on Karr's petition, the trial court granted a stay of the proceeding but denied the request to strike the lien. The trial court concluded that the Association was authorized by the Declaration and by the Act to file the

---

3. Article IX of the Declaration provides that a unit owner has the right to appeal a decision of the Judicial Committee to the American Arbitration Association.

October 22, 2003, lien and, further, Karr had failed to provide any legal basis for striking it.[4] Because the substantive validity of the Association's assessment was still at issue in Karr's declaratory judgment action, the trial court granted Karr's stay of the proceedings on execution of the lien. The trial court explained that if "the court grants the relief requested by Karr in the declaratory judgment action, the Homeowners Association Lien will accordingly be stricken." Trial Court Opinion at 2.

■ Karr appealed to this Court, presenting ten questions for our review.[5] They include, *inter alia*, whether the Association's lien is defective on its face; whether the lien has been extinguished by the Association's failure to collect the fine within three years of its imposition; whether the Association had authority under the Act to file its October 22, 2003, lien; and whether the assessment, or fine, lacks substantive merit thereby rendering the lien a nullity. We consider here only the dispositive question, and that is whether the Association's lien of October 22, 2003, was authorized by the Act.

The substantive validity of the Association's assessments and fines against Karr will be adjudicated, in due course, in the pending declaratory judgment action.

Karr explains that if the trial court had simply stayed the lien proceedings without denying his petition to strike, he would not have appealed to this Court. However, by denying his petition to strike, the trial court made conclusions of law that Karr fears may render the declaratory judgment action an exercise in futility. This fear is not well grounded. By holding open the possibility of striking the lien if the declaratory judgment action is decided in Karr's favor, the trial court has expressed a commitment to decide the merits of the declaratory judgment action without reference to its decision on the petition to strike. This is appropriate inasmuch as a factual record has never been made on the substantive question of whether Karr has ever, in fact, violated the covenants.[6]

■ We turn, then, to the merits of Karr's argument that the Association's lien of October 22, 2003, was not authorized by the Act. The Act plainly provides for assessment liens, stating, in relevant part, as follows:

> *[t]he association has a lien on a unit for* any assessment levied against that unit or *fines imposed against its unit owner from the time the* assessment or *fine becomes due.*

4. By contrast, the trial court noted that Karr did not follow the procedures set forth in the Declaration because he did not appeal to the American Arbitration Association. Arbitration of disputes arising from the Declaration is neither mandatory nor exclusive. Both parties are free to pursue any remedy with respect to rights and obligations arising under the Declaration. *See infra* note 16.

5. On April 2, 2004, the Association filed a motion to quash the appeal asserting that the trial court order was interlocutory. On May 6, 2004, this Court denied the Association's motion to quash, which is the law of the case. We note that, in general, a court's refusal to grant a motion to strike is not considered an appealable order. *See Caldwell v. Carter*, 147 Pa. 370, 23 A. 575 (1892) (refusal to strike a mechanic's lien is not a final judgment); *Borough of Ambler v. Regenbogen*, 713 A.2d 145 (Pa.Cmwlth.1998) (refusal to strike a municipal lien is not an appealable order); *Penn Township v. Hanover Foods Corporation*, 847 A.2d 219, 222 n. 9 (Pa.Cmwlth.2004) (refusal to strike a municipal lien is not an appealable order).

6. The Association judged Karr guilty of violating the covenants in the Declaration because he did not appear at the Judicial Committee's so-called hearings.

68 Pa.C.S. § 5315(a)(emphasis added). Thus, by operation of Section 5315(a), the Association had a lien on Karr's unit as of the day its fine became due. However, it was not necessary for the Association to make its October 22, 2003, filing with the Prothonotary in order to perfect that assessment lien. The Act provides that an association's lien is perfected simply by recording its declaration; such recording "constitutes record notice and perfection of the lien." 68 Pa.C.S. § 5315(d). In this case, the Declaration was recorded at "Deed Book Vol. 6125, p. 513" with the Recorder of Deeds of Allegheny County. R.R. 47a. Thus, the Association's lien against Karr's property for unpaid assessments was perfected long before October 22, 2003.

Nevertheless, the Association filed a second lien on October 22, 2003, for Karr's unpaid assessments in the amount of $34,900, representing unpaid fines as of July 30, 2003, and for costs. As a result, the Association has perfected two liens against Karr in two different filings made with two different offices, one with the Recorder of Deeds and the other with the Prothonotary. Karr contends that the Association's second lien is not authorized, wastes judicial resources and is contrary to the Act. The Association counters that the second lien was implicitly authorized because it has been granted broad authority under the Act to enforce its assessments.[7]

 A lien is a charge on property, either real or personal, for the payment or discharge of a particular debt or duty in

priority to the general debts or duties of the owner. It encumbers property to secure payment or performance of a debt, duty or other obligation. *51 Am.Jur.2d, Liens § 1.* Liens fall into three categories: common law liens,[8] equitable liens[9] and statutory liens. *Summary of Pennsylvania Jurisprudence 2d, Property,* § 19.2 (2000). In the case *sub judice,* we consider a statutory lien. The "character, operation and extent of the [statutory] lien must be ascertained from the terms of the statute which creates and defines it, and the lien will extend only to persons or conditions provided for by statute, and then only where there has been at least a *substantial compliance with all the statutory requirements.*" *U.S. v. Beaver Run Coal Co.,* 99 F.2d 610, 612 (3d Cir.1938) (emphasis added). These principles for determining the validity of a statutory lien have been adopted by our Supreme Court. *See, e.g., Murray v. Zemon,* 402 Pa. 354, 358, 167 A.2d 253, 255 (1960) (mechanics' liens are available only on such terms as the Legislature sees fit to provide).

As explained, the Association's assessment lien against Karr's property was perfected when the Declaration was recorded with the Recorder's Office. The question, then, is whether a second lien that perfects an already perfected lien "substantially complies" with the requirements of the Act and is required to enforce an assessment lien, as asserted by the Association.

Enforcement of an association lien is directly addressed in the Act. It states, in relevant part, as follows:

---

7. The Act provides that, "[t]he remedies provided by this subpart shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." 68 Pa.C.S. § 5114(a).

8. For a common-law lien to arise, a claimant must have exclusive possession of property, since the lien is based directly on idea of

possession. *Associates Financial Services Co., Inc. v. ODell,* 262 Pa.Super. 584, 396 A.2d 1324 (1979).

9. An equitable lien is not based upon possession, but is grounded upon the principle of unjust enrichment. *Gladowski v. Felczak,* 346 Pa. 660, 664, 31 A.2d 718, 720 (1943).

*The association's lien may be foreclosed in a like manner as a mortgage on real estate* .... Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged under section 5302(a)(10), (11) and (12) (relating to power of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due to the association by the unit owner or enforcement of provisions of the declaration, by laws, rules or regulations against the unit owner are enforceable as assessments under this section.

68 Pa.C.S. § 5315(a) (emphasis added). However, an association may also pursue payment of unpaid assessments by employing remedies less drastic than foreclosure. It is free, for example, to bring an action in debt or in contract to collect an assessment. Subsection (f) provides for such remedies as follows:

*[N]othing in* this section shall be construed to *prohibit actions or suits to recover sums* for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure.

68 Pa.C.S. § 5315(f) (emphasis added).

The filing of the second lien of October 22, 2003, did not advance the Association's enforcement of its assessment lien by foreclosure in "like manner as a mortgage on real estate." 68 Pa.C.S. § 5315(a). An action of mortgage foreclosure is an action at law governed by the Pennsylvania Rules of Civil Procedure Nos. 1141–1150; 22 Standard Pennsylvania Practice 2d § 121:30 (2003). These procedural requirements must be strictly followed. *First Federal Savings & Loan Association of Greene County v. Porter,* 408 Pa. 236, 183 A.2d 318 (1962). Nowhere do these rules require, or authorize, the filing of a second lien. To the contrary, they specify that a foreclosure action begins with the filing of a complaint that sets forth, *inter alia,* where the mortgage is recorded and the amount outstanding on the mortgage. Pa. R.C.P. No. 1147.[10] To enforce its assessment lien against Karr in accordance with the Act, the Association should have filed a complaint, not a new lien.[11]

Further, the Association's lien of October 22, 2003, cannot be justified on grounds that it was needed to establish in the public record the amount of the assessment owed by Karr. First, the October 22, 2003, lien only provides the amount as of a single point in time, *i.e.,* July 30, 2003. According to the Association, Karr's fines are increasing daily, but, somewhat inconsistently, the Association is not filing a new lien each day.[12] The mechanism for deter-

---

**10.** It states:

The plaintiff shall set forth in the complaint:
(1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;
(2) a description of the land subject to the mortgage;
(3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;
(4) a specific averment of default;
(5) an itemized statement of the amount due; and

(6) a demand for judgment for the amount due.
Pa. R.C.P. No. 1147.

**11.** Of course, this Complaint would only be complicated by having more than one lien recorded. Pa. R.C.P. No. 1147 requires a separate complaint for each mortgage. This means that the Association would have to file two complaints: one for the lien perfected by the Declaration and a second for the lien perfected by the October 22, 2003, filing.

**12.** Mortgage lenders do not file a new lien each month as principal on an outstanding

mining the amount of an individual unit owner's lien is provided in the Act. It states, in relevant part, as follows:

> *The association shall furnish* to a unit owner upon written request a *recordable statement setting forth the amount of unpaid assessments currently levied* against his unit and any credits of surplus in favor of his unit under section 5313 (relating to surplus funds). The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board and every unit owner.

68 Pa.C.S. § 5315(h) (emphasis added). Thus, the amount of a lien is determined by requesting a statement from the association, not by filing a second lien.[13] Whether that amount is correct can be litigated in an association's foreclosure action to collect it, or, as here, in a declaratory judgment action brought by a unit owner.

The Association asserts that its second lien is the custom in Allegheny County. Nothing in the record supports this claim but for purposes of this discussion, we consider it so. It goes without saying that statute trumps custom and, therefore, for the custom to be lawful it must be grounded in the Act. As noted, Section 5315(h) requires an association to issue a "recordable statement" upon request of a unit owner. Thus, the custom of filing such statements with the Prothonotary, although not specified in the Act, appears allowable under the Act.[14] However, this statement does not function as a lien, which is a security interest of a creditor in property that lasts until the debt is satisfied, and it is error to call this statement a lien. The problem is more than one of simple nomenclature. The Association does not claim that its "Homeowners Association Lien" is actually a Section 5315(h) recordable statement. It asserts that it is a lien and that it must be filed as step one in enforcement of its assessment lien. It is wrong. The first step to enforcing an assessment lien is the filing of a foreclosure complaint.[15] 68 Pa.C.S. § 5315(a).

 The Association believes that Karr has contractually obligated himself to pay a daily fine merely for not appearing at a meeting of the Judicial Committee. There has never been a factual determination made by the Association or by a court as to whether the structure in Karr's front yard is a rose trellis or more akin to the

mortgage loan is paid down. It is not necessary for the public record to notify the world of the balance left on a secured debt but only of the existence of the creditor's security interest. The balance is determined at closing on the sale of a unit or in a court of law when an association institutes a breach of contract or foreclosure action.

13. If the Act had contemplated the filing of a second, individualized lien, it would have specified the procedures for its filing, as it did for the recording of the Declaration. Section 502 of the Mechanics' Lien Law of 1963, Act of August 24, 1963, P.L. 1175, 49 P.S. § 1502, provides detailed procedures for the filing requirements and service of a lien. Failure to serve notice of the lien or file the affidavit of service may cause it to be stricken. The absence of any comparable provisions in Act is just another indication that the General Assembly did not intend for such individual liens to be filed by associations against unit owners.

14. Here, of course, Karr did not request a statement. Whether the "Homeowners Association Lien" could be appropriately filed as a recordable statement under 68 Pa.C.S. § 5315(h), even though not requested, is not a question before us.

15. The Association's zeal for filing liens may leave it hoisted on its own pétard. To the extent it believes the Declaration is inadequate in some way, it should be filing each month for each unit owner. It may be creating a contractual obligation for itself that is neither desirable nor necessary.

Great Wall of China.[16] The Association has acted as if the complaining party had no burden to fulfill; however, the failure of an non-burdened party to appear at a hearing does not divest the moving party of its evidentiary burden. Article IX of the Declaration provides:

> The [Judicial] Committee, after hearing all such testimony, shall *if such violation has been factually verified,* levy a special assessment upon the owner who violated ... the condition, rule or regulation of the Association.

R.R. 62a (emphasis added).[17] The Association did not hear testimony and factually verify a covenant violation. Indeed, the scope of the Association's authority to regulate the appearance of a unit; a finding as to what Karr has done to his yard and door; and a conclusion on whether Karr's actions violated the covenants have not been determined. These determinations are required before the proper amount of the Association's assessment lien, if any, can be established let alone a foreclosure instituted.

We are mindful that the Association has a serious responsibility to maintain the value of London Towne by making it an attractive place to live and by managing the community in a fiscally sound manner.[18] However, all its efforts in this regard must be firmly rooted in the Act. There is no statutory basis for the Association's attempt at double liens. The Association's putative second lien only clutters the public record and places in doubt the efficacy of the lien perfected by the recording of the Declaration.

We hold that the Association's second, and redundant, lien filed on October 22, 2003, was not authorized by the Act. Accordingly, the trial court erred in not striking the lien, and we reverse that part of the trial court's order.

### ORDER

AND NOW, this 15th day of December, 2004, the order of the Court of Common Pleas of Allegheny County dated November 12, 2003, is hereby reversed in part and affirmed in part. The order denying the petition to strike is reversed and in every other respect the order is affirmed.

16. The Association contends that the only way the Judicial Committee's determination that Karr violated the Association's rule on doors, pediments and fences is by appeal to arbitration. In support, it directs us to Article IX of the Declaration, which states in relevant part as follows:

> Any owner aggrieved by this Section shall have the right to appeal from the decision of the Committee to the American Arbitration Association, whose decision shall be final and binding upon all the parties thereto.

R.R. 62a. Had Karr sought arbitration, it would have been binding. However, Article IX merely establishes the unit owner's right, not a duty, to pursue arbitration. Nowhere does the Declaration state, as argued by the Association, that arbitration is the exclusive means for challenging a decision of the Judicial Committee. As a contract, the Declaration's terms may be litigated in the same manner as any contract.

17. Here, the Association did not take evidence but, apparently, used a default judgment mechanism, not authorized in the Declaration, to determine Karr's violation.

18. Nevertheless, one cannot help wondering whether the Association's fines in the amount of $34,900, as of July 30, 2003, for an allegedly non-conforming door and fence will entice wide interest in this planned community.