FOREST HIGHLANDS COMMUNITY
ASSOCIATION, Appellant,

v.

Nancy S. HAMMER, Appellee.

Superior Court of Pennsylvania.

Argued March 29, 2006.

Filed July 14, 2006.

Louis P. Vitti, Pittsburgh, for appellant.

Elliott J. Schuchardt, Pittsburgh, for appellee.

BEFORE: HUDOCK, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 This case is on remand from the Pennsylvania Supreme Court, which ordered that this Court "address the merits" of the grant of the motion to strike the writ of execution entered in favor of the Defendant/Appellee Nancy Hammer. The *allocatur* appeal was perfected by the Plaintiff/Appellant Forest Highlands Community Association (hereinafter "Appellant" or "Association").[1] We affirm.

¶ 2 The procedural history of this case consists of the following facts; to-wit:

The record discloses that Appell[ee] owns a townhouse that is part of the [Appellant] Forest Highlands Community Association, a Pennsylvania non-profit corporation operating for the benefit of unit owners of the Forest Highlands development in Harmer Township, Allegheny County, Pennsylvania. Appell[ant] was created by the recording of a Declaration of Covenants, Conditions and Restrictions ("Declaration") in the Office of the Recorder of Deeds of Allegheny County. Per the terms of the Declaration, all unit owners were required to pay monthly maintenance fees, but Appell[ee] failed and refused to pay said fees. As a result, on April 22, 2003, Appell[ant] filed a lien [n.1] against Appell[ee] for failing to pay assessment fees (totaling $7,258.59) incurred for services performed from September of 2001 through December of 2001.

Appell[ee] filed a petition to open and/or strike judgment alleging that she did not receive notice of the delinquent assessment of fees owed to Appell[ant] or notice of the lien. Appell[ee] also claimed she learned of the lien through a credit report indicating that a civil judgment had been docketed against her on or about April 17, 2003. *See* Appell[ee's], "Petition to Open and/or Strike Judgment," 8/15/03, at 5, ¶ 11; Record No. 4. In response, Appell[ant] averred Appell[ee] "was given all the required notice of the filing of the Lien through the recording of the Declaration. No additional notice [wa]s required. [...] [Consequently, Appell(ant) wa]s entitled to the amount of the Lien plus additional costs and attorneys' fees." *See* Appell[ant's], "Memorandum of Law," 8/14/03, at 3; Record No. 3; *see also* Appell[ant's], "Answer to Petition to Open and/or Strike Judgment," Record No. 5.

On July 9, 2004, Appell[ant] filed a praecipe for writ of execution with the sheriff of Allegheny County to sell Appell[ee's] real estate to satisfy a money judgment now totaling $16,668.22. In reply, Appell[ee] filed a "Motion to Open and/or Strike Judgment" and "Petition to Stay and Set Aside Writ of Execution" on July 14th and July 16th of 2004, respectively. The latter request was granted by order of court dated July 16, 2004, which stated that, finding no notice was given to Appell[ee], execution proceedings were stayed until noon on July 22, 2004. Appell[ee] was also permitted to seek an extension to delay execution proceedings by filing a request with the motions judge on July 21, 2004. Appell[ee] did file a petition to stay execution pending a motion for reconsideration with the motions judge on July 21, 2004. However, the petition was denied by order dated July 21, 2004, because Appell[ee] had already appealed the subject order of the Superior Court on July

---

1. *See Forest Highlands Community Association v. Hammer,* 586 Pa. 45, 889 A.2d 1210 (2006).

9, 2004 (the case docketed with this Court at No. 1214 WDA 2004).

[n.1] The lien (captioned the "Planned Community Lien") was filed pursuant to the Uniform Planned Community Act of Pennsylvania of 1996, December 19, P.L. 1336 No. 180; 68 Pa.C.S.A. § 5105 *et seq.* [...].

*Forest Highlands Community Association v. Hammer,* 879 A.2d 223, 225 n. 1 (Pa.Super.2005) (*"Hammer I "*), *allocatur denied,* 586 Pa. 758, 895 A.2d 550 (2006).

¶ 3 After Appellee filed a notice of appeal from the June 9, 2004 order directing her to pay $10,000.00 in escrow and proceed to arbitration to resolve her dispute, Appellant filed a praecipe for a writ of execution to collect $16,668.22, which included the amount of the lien, accrued interest, and assessment fees. Appellee's effort to stay the writ of execution was granted on a temporary basis by order of court entered on July 16, 2004. Subsequent efforts by Appellee to stay execution were denied by orders issued on July 21, 2004, and August 9, 2004. The former order denied Appellee's petition to strike or stay execution of the lien because she "had already appealed the subject order to the Superior Court." *See Hammer I,* 879 A.2d at 226.

¶ 4 Nonetheless, Appellee filed a second motion to strike the writ of execution, and this time it was granted by order dated September 10, 2004. The present appeal ensued and raises the following questions; to-wit:

A. WHETHER HOMEOWNER WAIVED ANY PROCEDURAL OBJECTION TO THE INSTITUTION OF THE INSTANT ACTION BY FAILING TO INCLUDE AN OBJECTION TO THAT EFFECT IN HER PETITION TO OPEN AND/OR STRIKE JUDGMENT?

B. WHETHER A PLANNED COMMUNITY LIEN IS A JUDGMENT UPON WHICH A WRIT OF EXECUTION MAY ISSUE?

C. WHETHER THE WRIT OF EXECUTION VIOLATES HOMEOWNER'S DUE PROCESS RIGHTS?

¶ 5 We turn, first, to the merits of Appellant's second argument (captioned Issue "B") that its lien is a judgment upon which a writ of execution may issue.

¶ 6 Authoritatively, as an Association, Appellant has within its arsenal of powers: 1) the ability to collect assessments for common expenses from unit owners; 2) to institute litigation in its own name on matters affecting the planned community; 3) to impose and receive payments, fees or charges for the use of the common elements [2] of the Association; 4) to impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fees for violations of the Association; 5) to charge a capital improvement fee, annually, for the general common expense to each unit owner; and 6) to exercise all other powers that may be implemented in this Commonwealth by legal entities like the Association. 68 Pa. C.S.A. § 5302(a)(2), (4)(10), (11), (12)(i) and (15). In effectuating these ends, the Uniform Planned Community Act ("UPCA") provides for an assessment lien, which Appellant claims is due from Appellee; to-wit:

§ 5315. **Lien for assessments**

(a) **General rule.**—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due.

---

**2.** "Common elements" is defined as common facilities or controlled facilities which relate to real estate in the planned community controlled by the Association. 68 Pa.C.S.A. § 5103.

68 Pa.C.S.A. § 5315(a). Consistent with Section 5315(a), Appellant had a lien on Appellee's unit as of the day the money became due. As a corollary thereto, the UPCA provides that an association's lien is perfected simply by recording its declaration, which also perfects the lien. 68 Pa. C.S.A. § 5315(d). Appellant's "Declaration" was recorded with the Recorder of Deeds of Allegheny County at Deed Book Volume 7362, Page 608, and the recordation is disputed by no one. *See Hammer I*, 879 A.2d at 225. Consequently, the Association's lien against Appellee was perfected long before it put in motion a judicial sale of Appellee's unit *via* the sheriff's office of Allegheny County.

¶ 7 Nonetheless, the Association activated a sheriff's sale of Appellee's unit for unpaid assessments in the amount of over $16,000.00, which sale was forestalled by Appellee's motion to strike writ of execution granted by order of court dated September 10, 2004. Appellant counters that the automatic creation of a lien upon a unit owner's property for failure to pay assessment fees (per Section 5315(a)) dispensed with the need to file a complaint, and this allowed Appellant to seek repayment of monies claimed due by means of a sheriff's sale. We disagree.

A lien is a charge on property, either real or personal, for the payment or discharge of a particular debt or duty in priority to the general debts or duties of the owner. It encumbers property to secure payment or performance of a debt. 51 *Am.Jur.2d, Liens* § 1. Liens fall into three categories: common law liens, [n.8] equitable liens, [n.9] and statutory liens. *Summary of Pennsylvania Jurisprudence 2d, Property,* § 19.2 (2000). [...] The "character, operation and extent of the [statutory] lien must

be ascertained from the terms of the statute, and then only where there has been at least a *substantial compliance with all the statutory requirements.*" *U.S. v. Beaver Run Coal Co.,* 99 F.2d 610, 612 (3d Cir.1938). These principles for determining the validity of a statutory lien have been adopted by our Supreme Court. *See, e.g., Murray v. Zemon,* 402 Pa. 354, 358, 167 A.2d 253, 255 (1960) (mechanics' liens are available only on such terms as the Legislature sees fit to provide).

[n.8] For a common law lien to arise, a claimant must have exclusive possession of property, since the lien is based directly on [the] idea of possession. *Associates Financial Services Co. v. O'Dell,* 262 Pa.Super. 584, 396 A.2d 1324 (1979).

[n.9] An equitable lien is not based upon possession, but is grounded upon the principle of unjust enrichment. *Gladowski v. Felczak,* 346 Pa. 660, 664, 31 A.2d 718, 720 (1943).

*London Towne Homeowners Ass'n v. Karr,* 866 A.2d 447, 451 n. 8, n. 9 (Pa. Cmwlth.2004) (emphasis in original).

¶ 8 As recited earlier, statutorily the Association's assessment lien against Appellee's property was perfected when the "Declaration" of the entity was recorded with the Recorder's Office of Allegheny County. The question, then, arises whether instigating a sheriff's sale perfects an already perfected assessment lien and "substantially complies" with the requirements of UPCA to allow enforcement of Appellant's assessment lien?

¶ 9 Enforcement of an association lien is directly addressed by UPCA, which states, as herein relevant:

> **The association's lien may be foreclosed in a like manner as a mortgage on real estate** [...].[3] Unless the decla-

---

3. The procedure to commence an action in mortgage foreclosure shall be in accordance with the rules relating to a civil action. Pa. R.C.P. 1141(b). To commence a civil action,

ration otherwise provides, fees, charges, late charges, fines and interest charged under section 5302(a)(10), (11) and (12) (relating to power of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due to the association by the unit owner or enforcement of provisions of the declaration, by laws, rules or regulations against the unit owner are enforceable as assessments under this section.

68 Pa.C.S.A. § 5315(a) (emphasis added). Furthermore, an association is not precluded from pursuing other avenues to obtain payment of assessments less drastic than foreclosure. For example, an association can avail itself of an action in debt or in contract to collect an assessment. Subsection (f) of the UPCA provides support for such alternative remedies as follows:

*Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien* or to prohibit an association from taking a deed in lieu of foreclosure.

68 Pa.C.S.A. § 5315(f) (emphasis added). In light of the aforesaid, seeking a judicial sale of Appellee's unit did not advance the Association's enforcement of its assessment lien by foreclosure in "like manner as a mortgage on real estate." 68 Pa.C.S.A. § 5315(a). In addressing an issue comparable to the one before us, the Commonwealth Court of Pennsylvania stated:

The filing of a second lien [ . . . ] did not advance the Association's enforcement of its assessment lien by foreclosure in "like manner as a mortgage on real estate." 68 Pa.C.S.A. § 5315(a). An action of mortgage foreclosure is an action at law governed by the Pennsylva-

the Rules of Civil Procedure allow for the filing of a writ of summons or complaint. Pa.R.C.P. 1007. *Appellant's failure to com-*

nia Rules of Civil Procedure Nos. 1141–1150; 22 Standard Pennsylvania Practice 2d § 121:30 (2003). These procedural requirements must be strictly followed. *First Federal Savings & Loan Association of Greene County v. Porter,* 408 Pa. 236, 183 A.2d 318 (1962). Nowhere do these rules require, or authorize, the filing of a second lien. To the contrary, they specify that a foreclosure action begins with the filing of a complaint that sets forth, *inter alia,* where the mortgage is recorded and the amount outstanding on the mortgage. Pa.R.C.P. No. 1147. To enforce its assessment lien against Karr in accordance with the [UPC]A[ ], the Association should have filed a complaint, not a new lien.

We hold that the Association's second, and redundant lien [ . . . ] was not authorized by the [UPC]A[ ]. Accordingly, the trial court erred in not striking the lien, and we reverse that part of the trial court's order.

*Karr,* 866 A.2d at 452, 454.

■ ¶ 10 *Sub judice,* expanding upon the rationale of *Karr,* we hold that Appellant seeking a judicial sale as the vehicle to secure payment of its assessment lien did not equate with the approved enforcement mechanism to collect an assessment lien by an association's action in mortgage foreclosure, action in debt or contract. To enforce its assessment lien against Appellee in accordance with UPCA, the Association should have filed a complaint, not a writ of execution for a judicial sale. Following such procedure would have availed Appellee the opportunity to contest receiving notice, which she claims never occurred, and afforded Appellee the opportunity to question the proper amount, if any, of the Association's assessment lien. Neither

mence its action against Appellee by the filing of a complaint, in contrast to a sheriff's sale, was its downfall. *See discussion infra.*

procedure was followed here, yet such protocol is firmly rooted in Pa.R.C.P. 1147(1)-(6).[4]

¶ 11 Thus, we find specious Appellant's contention that using a sheriff's sale to recoup monies claimed due from Appellee was the proper step to enforce its assessment lien. Rather, "[t]he first step to enforcing an assessment lien is the filing of a foreclosure complaint[, action in debt or contract]. 68 Pa.C.S.[A.] § 5315(a)." *Karr*, 866 A.2d at 453.

¶ 12 Next, we address Appellant's Issue "C," which questions whether the writ of execution violated Appellee's due process rights.

¶ 13 Previously, in response to Appellant's Issue "B," we concluded that resort to a sheriff's sale was inappropriate to collect the Association's assessment lien, *a fortiori*, it follows that the use of a writ of execution to initiate and facilitate collection of the same debt must be ineffectual as well. To hold otherwise would be incongruous.

¶ 14 To explicate, the fact that Appellant did not institute suit by mortgage foreclosure or file an action in debt or contract means it failed to provide Appellee with "notice" of the debt per Pa.R.C.P. 1147(4) and/or a means to deny liability per Pa.R.C.P. 1029. *Cf. McKesson v. Division of Alcoholic Beverages*, 496 U.S. 18, 36, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (described the "root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest [ . . . ]"); *Chester Water Auth. v. Pa. PUC*, 581 Pa. 640, 648, 868 A.2d 384, 389 (2005) ("The Commission acknowledges that fundamental principles of due process require notice and an opportunity to be heard where an administrative agency makes a fact-based adjudication effecting property rights[.]"). Therefore, absent compliance with case law, *Karr, supra*, and statutory law, Pa. R.C.P. 1141–1150, both of which we read to use a complaint to collect an assessment lien, we find Appellant's refutation of Appellee's due process argument to be unpersuasive.

¶ 15 The last of Appellant's protestations argues that Appellee waived any objection to its use of a sheriff's sale by failing to include an objection to the same in her petition to open and/or strike judgment.

¶ 16 Our review of the record discloses that Appellee's petition to open and/or strike judgment was filed on August 14, 2003, and the only document of record prior thereto was Appellant's "Planned Community Lien," which five paragraphs made no mention of an effort on the part of Appellant to execute upon the lien. *See* Record No. 1. In point of fact, Appellant did not file a "Praecipe For Writ of Execution [, etc.]" until July 9, 2004.[5] In re-

---

4. The commencement of a mortgage foreclosure action by complaint requires a plaintiff to set forth the following in said pleading; to-wit:

(1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;

(2) a description of the land subject to the mortgage;

(3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;

(4) a specific averment of default;

(5) an itemized statement of the amount due; and

(6) a demand for judgment for the amount due.

Pa.R.C.P. 1147(1)-(6).

5. On July 9, 2004, Appellant requested a writ of execution to allow the sheriff to sell Appellee's residence. As a result, absent proof of Appellee's prior knowledge that Appellant would attempt to sell her "house simply by

sponse, Appellee filed a "Petition to Stay and Set Aside Writ of Execution" on July 16, 2004, claiming the writ of execution and accompanying court order made "no mention of there being a 'Judgment' entered for the [Appellant] in any dollar amount, nor [...] that 'Judgment' was entered against the [Appellee], Nancy Hammer in any dollar amount." *See* Record No. 19. When a rule to show cause came before the trial court, a consent order dated June 9, 2004, was issued requiring the parties to proceed to arbitration, provided Appellee posted $10,000.00 in escrow.

¶ 17 Instead of creating an escrow account, Appellee filed an appeal of the June 9, 2004 order—this appeal was resolved against Appellee's interest. *See Hammer I, supra.* In the interim, Appellant filed a *praecipe* for a writ of execution on July 9, 2004, which Appellee sought to stay pending submission of a motion for reconsideration. When the motion was denied, Appellee, undaunted, filed a motion to strike the writ of execution. On this occasion, the trial court issued an order dated September 10, 2004, granting Appellee's motion to strike "any writ of execution heretofore issued in this action [...]." Appellant filed a timely notice of appeal, which order was reversed by this Court at No 1752 WDA 2004. On *allocatur* to the Pennsylvania Supreme Court, Appellant's petition was granted, the order was vacated, and the case was remanded to this Court to address the merits of Appellant's claims. *See Forest Highlands Community Ass'n v. Hammer,* 586 Pa. 45, 889 A.2d 1210 (2006).

¶ 18 As stated earlier, we have found Appellant's first two issues meritless. The same fate befalls Appellant's final claim that Appellee has failed to preserve her challenges to the writ of execution by fail-

ing to articulate the basis for the same in her petition to strike judgment.

A petition to strike judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record. In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, *i.e.,* the complaint and the documents [ ... of record]. Matters dehors the record filed by the party whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record is disputed, then the remedy is by a proceeding to open the judgment and not to strike. An order of court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.

*Resolution Trust Corp. v. Copley Qu-Wayne Associates,* 546 Pa. 98, 104, 683 A.2d 269, 273 (1996) (citations omitted).

 ¶ 19 Herein, Appellee filed a "Petition to Stay and Set Aside Writ of Execution," which we read as a petition to strike judgment. Therein, Appellee averred:

The Writ of Execution filed on July 9, 2004, states "that it is to satisfy the Judgment". The Order of Court dated June 9, 2004, makes no mention of there being a "Judgment" entered for the [Appellee] in any dollar amount, nor does this Order of Court state that "Judgement" [*sic*] was entered against the [Appellee], Nancy Hammer in any dollar amount.

filing a lien," she could not have waived objecting to the same in her August 14, 2003,

petition to open and/or strike judgment.

Wherefore, [Appellee], Nancy Hammer, respectively requests that this Honorable Court in seeking emergency relief, Set Aside the Writ of Execution and Stay the Sheriff's Sale of Her Property; Her Home.

Appellee's "Petition to Stay and Set Aside Writ of Execution," 7/19/04, at 5; Record No. 19. Additionally, Appellee filed a brief in support of her motion to strike the writ of execution, which states, in relevant part:

**II.** *The Writ of Execution should be striken [sic] because the [Appellant] has not [...] obtained a judgment upon which to execute.*

\* \* \* \*

**A.** *The statute specifically requires the Association to file a complaint to foreclose the lien.*

First, the plain meaning of the statute that creates the Association's lien *requires* the Association to file a complaint against the [Appellee] before foreclosing upon the lien.

In this case, the [Appellant] is seeking to foreclose upon a lien authorized by the Pennsylvania Planned Communities statute. The statute specifically states that *"the association's lien may be foreclosed in a like manner as a mortgage on real estate."*

\* \* \* \*

In this case, the [Appellant] has not yet filed a complaint against the [Appellee] or obtained a judgment against the [Appellee]. [...] The docket sheet shows that the [Appellant] has not filed any complaint against the [Appellee] [...] to foreclose its lien against the [Appellee's] house.

Appellee's "Brief in Support of Motion for Order Striking Writ of Execution [...]," 9/08/04, at 3–5 (emphasis added); Record No. 27. Consistent with Appellee's above-stated assertions, Appellant concedes that, "no 'judgment' has been entered against [Appellee]; rather, a statutory Planned Community Lien was filed [...]." Appellant's "Petition to Open" attached to Appellee's "Addendum to Reply Brief in Support of Motion for Order Striking Writ of Execution [...]," 9/13/04, ¶ 12; Record No. 29.

¶ 20 The trial court granted the motion to strike the writ of execution, and, in doing so, gave credence to Appellee's "lack of judgment" argument; to-wit:

I granted the Motion to Strike because it is clear on these facts that there is no judgment in the present record on which execution can issue. There is a lien; although, of course, there was a lien already in existence before [Appellant] filed the document that commenced the present action. *See* 68 Pa.C.S. § 5315(d).

At best, the document [Appellant] filed is a Complaint. There is simply no support in the Act or other law for interpreting that document as a judgment or its equivalent. It is a lien which must be foreclosed upon by legal action. Interpreting the document that was filed as a Complaint, it may be that the [Appellee] is in default of answering it, but even so, no steps to enter judgment based on that default have been taken.

I therefore conclude that the Writ of Execution obtained by [Appellant] was a nullity and subject to being stricken.

Trial court opinion, 12/13/04, at 2. Given the above-stated account of the pleadings and their contents, we find unpersuasive Appellant's contention that Appellee waived the "lack of judgment" argument as a predicate for the trial court granting the motion to strike the writ of execution.

¶ 21 Our review of the record substantiates the trial court's conclusion that no judgment was secured by Appellant in advance of attempting to execute its lien.

Stated otherwise, "[h]ad a writ of execution been levied on real estate in [Allegheny] county on which the judgment was a lien, [Appellant] could have proceeded to execution and sale without violating [. . .] the statute." *See* 68 Pa.C.S.A. § 5315(a); *Mencke v. Rosenberg*, 202 Pa. 131, 138, 51 A. 767, 770 (1902); *Karr*, 866 A.2d at 452 (To enforce an assessment lien against a unit owner, an association should file a complaint first, not a second lien.); *Thomas Associates Investigative and Consulting Services, Inc. v. GPI LTD., Inc.*, 711 A.2d 506 (Pa.Super.1998) (Protocol requires that once a confessed judgment is obtained by a creditor, a praecipe for writ of execution need be filed to execute upon the debtor's property in order to collect the judgment.).

¶ 22 The fact that the record is devoid of any evidence that a judgment was entered justifies the trial court's issuance of an order granting Appellee's petition to strike the writ of execution.

¶ 23 Accordingly, finding no merit to any of Appellant's complaints, we affirm the order appealed.

¶ 24 Order affirmed.