IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Estate of John G. Guyaux and :
Mirian V. Guyaux, Deceased, and :
Gary Guyaux and Christy Guyaux, Heirs :
　 :
　 :
v. : No. 627 C.D. 2018
: Argued: February 11, 2019
Township of North Fayette :
　 :
Appeal of: Christy Guyaux :


BEFORE:　 HONORABLE MARY HANNAH LEAVITT, President Judge
　　　　　 HONORABLE ANNE E. COVEY, Judge (P.)
　　　　　 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT　　　　　　　　　　FILED: May 6, 2019

　　　　Christy Guyaux appeals an order of the Court of Common Pleas of Allegheny County (trial court) awarding costs to the Allegheny County Sheriff's Office and the Township of North Fayette for expenses incurred by law enforcement officers in removing a firearm collection from a condemned house inherited by Christy Guyaux and her brother, Gary Guyaux.[1]  The trial court ordered these costs to be satisfied by the sale of the firearms.  Christy Guyaux argues that the trial court lacked authority to impose the costs against her and to order the sale of her brother's firearms.  We affirm.

　　　　On December 7, 2016, the Township of North Fayette (Township) filed a complaint in equity against the Estate of Mirian Guyaux and her heirs, Gary and Christy Guyaux, alleging numerous violations of the Township's property

---

[1] Gary Guyaux and the Estate of John G. Guyaux and Mirian V. Guyaux have not filed briefs in this matter.

maintenance code[2] for their property located at 7825 Noblestown Road, McDonald, Allegheny County. Reproduced Record at 3a (R.R. ___). As the intestate heirs of their mother, Christy and Gary Guyaux (collectively, the Guyauxs) each own a fifty percent interest in the property. According to the complaint, Gary Guyaux was the only individual who resided at the house, but he has not lived there since his incarceration in April 2016. The Township asked the trial court to decree that the property is "uninhabitable and not safe, sanitary or fit for human occupancy" and order the Guyaux siblings to abate the code violations. R.R. 6a.

On December 8, 2016, the Township filed a motion for preliminary injunctive relief. In support, the Township asserted that upon release from incarceration, Gary Guyaux would reside at the uninhabitable and unsafe house. Christy Guyaux stipulated that the house was uninhabitable. The trial court granted a preliminary injunction on the same day to restrain Gary Guyaux from occupying the premises.

On December 13, 2016, the trial court conducted a hearing on the continuation of the injunction. The trial court determined that the house was still not fit for human occupancy and enjoined its occupancy until all code violations were abated. With the express written consent of Christy Guyeaux, the trial court entered an injunction directing the Guyauxs to "fully abate and remedy all code violations at the Subject Premises, or demolish all dangerous structures thereon and remove all personal items littered throughout the property" within six months of the trial court's order. Trial Court Order, 12/13/2016, at 1; R.R. 119a. This injunction further directed that:

---

[2] The Township has adopted the 2009 International Property Maintenance Code.

> If Defendants fail to fully abate and remedy all code violations existing on the Subject Premises, or to demolish all dangerous structures thereon and remove all personal items littered throughout the property, within 6 months of the date of this Order being Granted, *Plaintiff, North Fayette Township, is granted the authority to remove the dangerous structures and buildings, in addition to removing all personal items littered throughout the property, and to lien the costs for such actions*.

*Id.* at 1-2; R.R. 119a-20a (emphasis added). This injunction required all code violations to be remedied by June 13, 2017.

Thereafter, the Township sent monthly notices to the Guyauxs, reminding them of their obligation under the injunction to remove all personal items and dangerous structures from the property by June 13, 2017. The Township reminded the Guyaux siblings that if they failed to take action, the Township would enter the property, remove the dangerous structures and personal items and assert a lien for its expenses.

On June 9, 2017, Christy Guyaux filed an application with the trial court to extend the time for abating the code violations. Her application explained that certain personal items belonged to Gary Guyaux, and they "require[d] specialized handling by certain licensed individuals because of their nature." R.R. 127a. The application stated that Christy Guyaux had "provided her consent to the December 13, 2016 Order of Court based primarily on her belief that her brother, Defendant Gary Guyaux, would be released from incarceration prior to the expiration of the six month period on June 13, 2017." R.R. 127a. However, on June 7, 2017, Gary Guyaux was convicted of making terroristic threats and ordered to remain incarcerated until his sentencing on September 7, 2017. The application stated that Christy Guyaux had received permission from her brother to remove his personal items.

3

On June 30, 2017, the trial court ordered the Township Police Department and the Allegheny County Sheriff's Office to enter the property and remove all firearms for transport to and safekeeping at the Sheriff's Office until further order from the court in Gary Guyaux's criminal case. The trial court directed the Sheriff's Office not to place indelible markings on the firearms "as they may be of antique quality and thereby any permanent markings may reduce their value." Trial Court Order, 6/30/2017, at 2; R.R. 179a. It also ordered the Sheriff's Office to photograph and inventory the firearms.

The same day, Christy Guyaux appealed to this Court and requested an emergency stay of the trial court's order of June 30, 2017. She asserted that the trial court lacked jurisdiction over the firearm collection. This Court denied the emergency stay application. *See Christy Guyaux, individually and as Attorney in Fact for Gary Guyaux v. Township of North Fayette*, (Pa. Cmwlth., No. 876 C.D. 2017, filed July 5, 2017). In its opinion and order, this Court concluded that Guyaux was not entitled to a stay because she could not demonstrate that her interests would be irreparably harmed in light of the trial court's directive that the Sheriff's Office safeguard the firearm collection. This Court's order allowed Guyaux's appeal to proceed, but it also granted Guyaux leave to seek a return of the firearms from the Sheriff or their transfer to a federally licensed firearms dealer. On July 21, 2017, Guyaux discontinued her appeal docketed at 876 C.D. 2017.

On July 3, 2017, deputies from the Sheriff's Office entered the property to remove the firearms and worked for three days, from 7:00 a.m. or 8:00 a.m. to 11:00 p.m. each day. The removal operation required approximately 10 officers, some of whom worked overtime. One of the supervising sergeants, Sergeant Eli Peyronel, described the property as "one of the most hazardous and disgusting"

4

places he had ever seen. Notes of Testimony, 7/18/2017, at 7 (N.T. ___); R.R. 244a. He further explained:

> The property on the outside has disabled vehicles spread throughout the back yard, the vegetation is overgrown. There's garbage packed in the vehicles, packed in the sheds and the barns and outhouses to the point you can't see in or even get in. You'd have to crawl over large piles of debris. The basement is – floor is completely covered with garbage, debris. Some of it I would classify as hazardous. It's metallic, rusted. There's a layer of moisture on everything in the basement, and I can't scientifically speak to this, but what appears to be black and green mold primarily covers the majority of the basement.

N.T. 7-8; R.R. 244a-45a. The deputies located firearms within the house stacked in piles, placed in large garbage cans and embedded within debris and garbage. There were piles of debris and garbage in the residence, shed and barn, some as high as the ceiling, which impeded the ability of the deputies to clear out the firearms.

After the firearms were recovered they were inspected and unloaded. The weapons were found to be in poor condition with corroded metal, and most were loaded with live ammunition. The deputies responsible for removing the ammunition spent considerable time doing so. Sergeant Peyronel testified:

> They had a station set up where they could manipulate the firearms and attempt to unload them in a safe manner pointed in a direction away from everyone else, and they had lubricants and chemicals which we had purchased which are manufactured for lubricating, for cleaning firearms. They utilized those, rags, and anything else they could to attempt to verify if the guns were unloaded, unload the guns if they were loaded and do so in a manner that it was minimizing and there was no damage to the firearms, any further damage than they were already damaged when we found them.

N.T. 19; R.R. 256a. From there, the weapons were logged, photographed, tagged, and placed in a pile for transport. In total, 586 weapons, including a grenade launcher, were found and tagged.

On July 21, 2017, Christy Guyaux, as attorney-in-fact for Gary Guyaux, filed a motion to transfer the firearms to a federally licensed firearms dealer she had chosen.[3] During a status conference held by the trial court in October 2017, counsel for the Sheriff's Office announced its intention to present a bill of costs to the court for the work it had completed, and the trial court agreed. Thereafter, the Sheriff's Office and the Township filed their bills of costs.

On December 20, 2017, the trial court conducted a hearing on the bills of costs submitted by the Sheriff and the Township. Christy Guyaux appeared at this hearing but did not present evidence. Nevertheless, she asserted that she could have hired a federally licensed firearms dealer to do the weapon removal job at a lower cost.

On February 7, 2018, the trial court entered the following order:

> 1. That the firearms found on the property of Defendants (this Order is not intended to make a determination as to which party is the legal owner of said property) and which are currently held at the North Fayette Township Municipal Building under the protection of the Sheriff of Allegheny County, shall be transferred to a federally licensed arms dealer for the purposes of sale. *Said dealer shall be mutually selected by Defendants, the Sheriff of Allegheny County and the Township of North Fayette*, and the parties shall memorialize said agreement in writing which shall be signed by counsel for all parties and delivered to the Court prior to the sale of any of said firearms.
>
> However, from said group of firearms there shall be exempted any firearm(s) or the like which are currently the subject of a

---

[3] The motion to transfer was consistent with this court's order at No. 876 C.D. 2017, filed July 5, 2017, that Guyaux could seek relief from the trial court with respect to the firearms.

6

criminal prosecution by state and/or federal authorities. These firearms shall be held by the Sheriff of Allegheny County pending further resolution of said criminal matter.

2. That the proceeds from said sale shall be placed in a joint escrow account in the name of the attorney for the Defendants, the attorney for the Sheriff's Department and the attorney for the Township of North Fayette.

3. From said escrow account the following amounts shall be paid: the Bill of Costs to the Sheriff of Allegheny County in the amount of $10,459.10 and there shall be paid $2,592.96 to the Township of North Fayette, as all objections to said Bills of Cost are hereby dismissed. *The said balance of the account after payment of the above amounts shall continue to be held in escrow until a determination is made as to who is/are the proper recipient(s) of the proceeds in said account.*

Trial Court Order, 2/7/2018, at 2-3; R.R. 530a-31a (emphasis added).

In response, Christy Guyaux requested the trial court to certify its February 7, 2018, interlocutory order to allow its immediate appeal. *See* 42 Pa. C.S. §702(b).[4] The trial court denied the petition. Christy Guyaux appealed to the Superior Court, and it transferred her appeal to this Court. On July 11, 2018, this Court allowed the appeal of the February 7, 2018, order as an appeal of a collateral order.

---

[4] It states:

> (b) Interlocutory appeals by permission.--When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa. C.S. §702(b).

This Court's July 11, 2018, order granted an interlocutory appeal to consider the following issues:

> (1) Whether [the trial court] erred in *sua sponte* awarding costs to the Sheriff of Allegheny County and Township of North Fayette for expenses incurred in removing, inventorying, and storing the firearms collection; and
>
> (2) Whether [the trial court] had the authority to order the sale of the firearms collection to pay for such costs.

Order, 7/11/2018, at 1; R.R. 547a. We consider these issues *seriatim.*

We first address Christy Guyaux's argument that the trial court erred in *sua sponte* awarding costs to the Sheriff of Allegheny County and Township of North Fayette. Guyaux asserts that under Section 1 of the act commonly referred to as the Municipal Claims and Tax Liens Act, 53 P.S. §7101,[5] a lien can only be filed against real property, not against personalty, such as firearms. Christy Guyaux also argues that the Sheriff and the Township are not permitted to recover under Section 19 of the Sheriff Fee Act, 42 P.S. §21119.[6] In the absence of a statute authorizing

---

[5] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§7101-7455. Section 1 of the Municipal Claims and Tax Liens Act provides that "[t]he word 'property,' as used in this act, means the real estate subject to the lien and against which the claim is filed as a lien." 53 P.S. §7101. This statute deals with tax liens.

[6] Act of July 6, 1984, P.L. 614, *as amended*, 42 P.S. §§21101-21120. Section 19 of the Sheriff Fee Act provides:

> In addition to fees provided for in this act, *the sheriff shall be paid costs*, charges and expenses *incident to the performance of an act required by court*, order, statute, rule or regulation including, but not limited to, printing costs, publication costs, services of experts, watchmen, postage and mileage, which shall be costs to be paid by the plaintiff, petitioner or person requiring them to be incurred.

42 P.S. §21119 (emphasis added). Here, the work of the Sheriff's Office was ordered by the trial court to effect the terms of the injunction entered December 13, 2016. Because we conclude the Sheriff's costs are recoverable under the terms of the trial court's order of December 13, 2016, we do not address this statutory basis for the trial court's award of costs.

8

the recovery of costs, Guyaux contends that the trial court erred in awarding costs to the Sheriff and the Township. She also asserts that because the Sheriff was not a party to the Township's complaint in equity, it cannot recover costs.

We reject the contention that the trial court acted *sua sponte*. The trial court's order of December 13, 2016, stated, specifically, that the Township could lien for costs if, after six months, it had to clear the Guyaux property. Christy Guyaux consented to that order in writing. Plainly, the cost to abate the nuisance presented by the house and weapons therein was imbedded in the trial court's order of December 13, 2016. The trial court did not raise the issue *sua sponte.*

The order of December 13, 2016, specifically provided, *inter alia,* that the Township could lien for costs, and it is binding upon Guyaux, who consented in writing to the order. *Lower Frederick Township v. Clemmer*, 543 A.2d 502 (Pa. 1988) (consent order serves as "a contract binding the parties thereto to the terms thereof."). Even if Christy Guyaux had not consented to the order, the trial court had the "legal and equitable powers required for or incidental to the exercise of its jurisdiction" pursuant to 42 Pa. C.S. §323[7] to order reimbursement. Sitting as a chancellor in equity, the trial court had broad authority to fashion a remedy to address a public nuisance: a dilapidated house, in which 586 weapons were stored and required special handlers to remove. *Williams Township Board of Supervisors v. Williams Township Emergency Company, Inc.*, 986 A.2d 914, 921 (Pa. Cmwlth.

---

[7] Section 323 of the Judicial Code, 42 Pa. C.S. §323, provides:

> Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the *enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction*, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.

42 Pa. C.S. §323 (emphasis added).

9

2009) ("Courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute…a chancellor in equity may fashion a remedy.").

The trial court also had broad authority to determine who would remove the firearms. The trial court's June 30, 2017, order expressly ordered the Township police "and/or the Allegheny County Sheriff's Department" to enter the property, remove the firearms and transport them to the Sheriff's Office. Trial Court Order, 6/30/2017, at 1; R.R. 178a. Furthermore, the trial court's order of December 13, 2016, did not limit the identity of persons to be used by the Township in the event it had to clear the Guyaux property of dangerous buildings and personalty.[8]

We also reject Guyaux's argument that the lien established by the order of December 13, 2016, could only be filed against real property. This Court has explained:

> A lien is a charge on property, *either real or personal*, for the payment or discharge of a particular debt or duty in priority to the general debts or duties of the owner. It encumbers property to secure payment or performance of a debt, duty or other obligation. 51 Am. Jur. 2d, Liens §1. Liens fall into three categories: common law liens, *equitable liens* and statutory liens. Summary of Pennsylvania Jurisprudence 2d, Property, § 19.2 (2000).

*London Towne Homeowners Association v. Karr*, 866 A.2d 447, 451 (Pa. Cmwlth. 2004) (emphasis added). Relevant here is the equitable lien doctrine, which is followed in Pennsylvania.

An equitable lien arises "either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied

---

[8] Guyaux may be correct in her suggestion that the Sheriff is an indispensable party. That issue is beyond the scope of this Court's July 11, 2018, order allowing Guyaux's interlocutory appeal. Nevertheless, the trial court did not exceed its broad discretion as a chancellor in equity by ordering the Sheriff to assist the Township with removal and storage of the firearms.

and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Baranofsky v. Weiss*, 182 A. 47, 48-49 (Pa. Super. 1935).

> Where property is held by one person subject to an equitable lien, the person having the equitable lien can enforce it by a proceeding in equity. Where the equitable lien is on a fund, for example a bank deposit, it is enforced by a direction to pay the claimant out of the fund. Where the equitable lien is upon other property the court will ordinarily decree that unless the holder of the property pays the amount of the lien the property be sold and out of the proceeds the amount of the lien be paid.

RESTATEMENT (FIRST) OF RESTITUTION §161 (AM. LAW. INST. 1937). Foreclosure of an equitable lien is subject to such conditions as the court may direct. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §56 (AM. LAW. INST. 2011). Liens created by statute, such as a mechanic's lien, require a judgment before there can be enforcement. *See, e.g.*, *Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 571 (Pa. Super. 2009) ("A Mechanics' Lien is a statutorily created lien for the purpose of securing priority for payment for work performed or materials provided in erecting or repairing a building."). Reducing a lien to judgment will be critical where there are multiple lienholders, whose priority will be determined in order of judgment entry. By contrast, here, the priority of liens is not a concern.

We reject Guyaux's contention that the trial court's order of February 7, 2018, was not authorized by the Municipal Claims and Tax Liens Act or the Sheriff Fee Act. Those statutes are inapplicable to the enforcement of the equitable lien on the firearms created by the December 13, 2016, order to which Guyaux consented. That order expressly provided that if the personal property was not

11

removed by June 13, 2017, the Township could do so and "lien the costs for such actions." Trial Court Order, 12/13/2016, at 1-2; R.R. 119a-20a. The trial court fashioned an appropriate remedy to enforce its order, agreed to by Christy Guyaux.

In her second issue, Christy Guyaux argues that the trial court lacked jurisdiction to order the sale of the firearm collection to reimburse the Township and the Sheriff for their approximate $13,000 in costs. Guyaux further argues that the trial court violated her due process rights because there was no notice that the firearm collection would be confiscated.[9]

The trial court issued its February 7, 2018, order in response to Christy Guyaux's motion to transfer the firearms to a federally licensed firearms dealer. The February 7, 2018, order provided that the Sheriff would safeguard the firearms until further order of the criminal court, where Gary Guyaux had pending matters, and that the firearms would be transferred to a federally licensed firearms dealer chosen by the parties for the purpose of sale. Thereafter, the parties were to notify the trial court in writing of their selection of a dealer "*prior to the sale of any of said firearms.*" Trial Court Order, 2/7/2018, at 2; R.R. 530a (emphasis added). The trial

---

[9] Christy Guyaux also argues that the trial court's June 30, 2017, order violated Section 6105(a) of the Pennsylvania Uniform Firearms Act of 1995 (Uniform Firearms Act), 18 Pa. C.S. §6105(a). She maintains that on June 7, 2017, when Gary Guyaux was convicted of terroristic threats, he became a "prohibited person" under the Uniform Firearms Act and had 60 days from the "imposition of the disability" to sell or transfer the firearms to another eligible person. Christy Guyaux proposed a transfer to a federally licensed firearms dealer in accordance with the Uniform Firearms Act. Once the Uniform Firearms Act was invoked, she states, the trial court lacked jurisdiction over the disposition of the firearms.

Guyaux's argument falls outside the scope of the issues on appeal recited in this Court's July 11, 2018, order. Even so, this argument lacks merit because the trial court's directive that the firearms be removed from the property (and stored) did not interfere with Gary Guyaux's ability to sell or transfer the firearms pursuant to the Uniform Firearms Act. More importantly, Guyaux discontinued her appeal of the June 30, 2017, order.

12

court did not order a forfeiture of the firearms in an *in rem* proceeding.[10]  Christy Guyaux has a power of attorney to make decisions about the firearm collection.  She filed a motion with the trial court to have the firearms transferred to a federally licensed firearms dealer so that they could be sold.

The Township instituted this equity proceeding to address the serious and dangerous public nuisance presented by the Guyaux property.  Before the house could be demolished, the personalty had to be removed.  The firearms were inextricably connected to the public nuisance.  In fact, their presence in the abandoned house was part of the nuisance because of the risk that the firearms could fall into the hands of criminal elements.

In conclusion, we hold that the trial court did not err in awarding costs to the Township and the Sheriff, as contemplated by the court's order of December 13, 2016.  Further, the trial court did not err in ordering the proceeds from the sale of the firearm collection be used to pay for such costs.  Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

---

[10] Christy Guyaux's challenge to the trial court's February 7, 2018, order directing the sale of the firearms is premised on her contention that the underlying seizure of the firearms was unlawful. Her argument is a non-starter, however, because she discontinued her appeal of the underlying order of June 30, 2017, that directed the removal of the firearms from the house.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Estate of John G. Guyaux and :
Mirian V. Guyaux, Deceased, and :
Gary Guyaux and Christy Guyaux, Heirs :
:
v. : No. 627 C.D. 2018
:
Township of North Fayette :
:
Appeal of: Christy Guyaux :

# **O R D E R**

AND NOW, this 6th day of May, 2019, the order of the Court of Common Pleas of Allegheny County dated March 1, 2018 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge