**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3469
_____


In re: KELLY L. MAKOWKA,


Appellant
_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-12-cv-02232)
District Judge:  Honorable Robert D. Mariani
_____


Submitted Under Third Circuit LAR 34.1(a)
May 27, 2014

Before:  HARDIMAN, SLOVITER
and BARRY, *Circuit Judges*.

(Opinion Filed:  June 9, 2014)

J. Zac Christman
Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri
712 Monroe Street
P.O. Box 511

Stroudsburg, PA 18360
        *Attorney for Debtor-Appellant*

Gino L. Andreuzzi
518 Alter Street
Hazleton, PA 18201
        *Attorney for Defendant-Appellee*

Charles J. DeHart, III
P.O. Box 410
Hummelstown, PA 17036
        *Chapter 13 Trustee*

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

This appeal requires us to interpret a state statute—the Pennsylvania Uniform Planned Community Act (UPCA), 68 Pa. Cons. Stat. §§ 5101–414—in the bankruptcy context. Appellant Kelly Makowka seeks in Chapter 13 proceedings to avoid a portion of claims made by her homeowners association, Pocono Mountain Lake Estates Community Association (the Association). The Bankruptcy Court, in an order affirmed by the District Court, held that the Association had a valid statutory lien on Makowka's residence pursuant to the UPCA, which the Association had enforced by obtaining judgments in debt against Makowka in state court. For the reasons that follow, we will vacate the District Court's judgment and remand for further proceedings.

2

## I

Makowka owns a home in Pocono Mountain Lake Estates in Pike County, Pennsylvania, a planned community as defined under the UPCA. In 2005, she fell behind on her homeowners association dues, which began to accrue late charges. In April 2008, the Association sued Makowka in the Pike County Magisterial District Court to collect a portion of the unpaid dues and obtained a default judgment of $2,436.70. As additional dues went unpaid, the Association sued Makowka again in April 2010 and obtained another default judgment, this time worth $3,599.08. Both judgments were transferred to the Court of Common Pleas of Pike County, which issued a writ of execution and attachment. Pursuant to that writ, a sheriff's sale of Makowka's property was scheduled for September 14, 2011.

Two days before the sheriff's sale, Makowka filed a Chapter 13 petition in the United States Bankruptcy Court for the Middle District of Pennsylvania. In her proposed bankruptcy plan,[1] Makowka moved to avoid the Association's claims under 11 U.S.C. § 522(f), which releases a debtor from obligations imposed by judicial liens

---

[1] Makowka proposed two bankruptcy plans that were rejected by the Bankruptcy Court before submitting her Second Amended Plan, which is the subject of this appeal. While this appeal was pending, Makowka proposed two amended plans. The Fourth Amended Plan is awaiting approval by the Bankruptcy Court and presumes that Makowka's appeal to this Court is successful. The Bankruptcy Court has stayed proceedings pending the outcome of this appeal.

(*i.e.*, money judgments) as well as non-possessory, non-purchase money security interests. Although Makowka acknowledged that Section 5315 of the UPCA granted the Association a self-executing statutory lien on her residence in the amount of the unpaid dues, she claimed that a portion of that lien had been extinguished by law because the Association had failed to foreclose on the lien within the statutory period of three years. Therefore, to the extent the Association's claims represented fees due before September 12, 2008, *i.e.*, three years before the date of her bankruptcy petition, Makowka contended that the Association had obtained dischargeable money judgments.

The Bankruptcy Court denied Makowka's motion, ruling that the Association had preserved its statutory lien. In an oral opinion, the Bankruptcy Court noted that it was "bound by Pennsylvania [a]ppellate decisions construing" the UPCA. These included the Pennsylvania Superior Court's decision in *Forest Highlands Community Association v. Hammer*, 903 A.2d 1236 (Pa. Super. Ct. 2006), which the Bankruptcy Court read to enable "an association . . . [to] perfect or enforce the lien for the unpaid assessments in a variety of manners, . . . [including] an action in debt." App. at 56 (discussing *Hammer*, 903 A.2d at 1240). The Bankruptcy Court also opined that a foreclosure action would be "odd" in the UPCA context, as the Association did not hold a mortgage upon which it could foreclose. It thus "reject[ed] the debtor's argument that the mortgage foreclosure action would be the exclusive remedy." *Id.* As a result, the Bankruptcy Court allowed the Association's unavoidable claim of $7,835.82, which represented the value of the money judgments, accrued unpaid debts, and interest at the time of the order. Makowka moved for reconsideration. When that motion was denied, she

4

timely appealed to the United States District Court for the Middle District of Pennsylvania.

The District Court affirmed. Turning first to the text of Section 5315, the District Court agreed that it supported Makowka's position that foreclosure was the exclusive method to enforce the statutory lien. After noting that the Pennsylvania Supreme Court had not yet addressed the question on appeal, the Court considered the relevant state intermediate court decisions—the Pennsylvania Commonwealth Court's decision in *London Towne Homeowners Association v. Karr*, 866 A.2d 447 (Pa. Commw. Ct. 2004), and the Pennsylvania Superior Court's decision in *Hammer*—for guidance as to how the Pennsylvania Supreme Court would rule.

The District Court adopted a narrow interpretation of *Karr*, reading the opinion to hold "that while an association may pursue an action in debt or contract against a tenant under 5315(f) to recover sums under a lien, '[t]he first step to *enforcing* an assessment lien is the filing of a foreclosure complaint.'" App. at 6 (quoting *Karr*, 866 A.2d at 453) (emphasis in original). It then found that *Hammer* "expand[ed] upon the rationale of *Karr*" and "clearly held that by filing an action in debt or contract, an association was enforcing its lien under the UPCA." App. at 7 (discussing *Hammer*, 903 A.2d at 1241). The District Court criticized the Superior Court's decision, opining:

> The *Hammer* court, in holding that the action in debt to collect unpaid assessments . . . satisfied the [enforcement] requirement in Section 5315(e) . . . ignored the well-established and fundamental distinction between proceedings *in*

5

*rem* and those brought *in personam*. It is difficult for this Court to understand how an action brought under Section 5315(f) "to recover sums for which subsection (a) creates a lien" can be considered a "proceeding[] to enforce the lien" for those unpaid assessments.

App. at 8. Despite its disapproval, the District Court thought it bound by *Hammer* because the decision "presents the latest and most definitive ruling by the intermediate courts of Pennsylvania with respect to the interpretation of Section 5315." *Id.* "[B]ecause the issue before this Court is unquestionably a matter of Pennsylvania law, it will give *Hammer* the *binding effect* that it *must*." *Id.* (emphasis added). For that reason alone, the District Court predicted that "[b]ecause the Pennsylvania Superior Court was clear in its holding and there appears to be no authority contrary to *Hammer*," the Pennsylvania Supreme Court would not overturn *Hammer*. App. at 8 n.5.

Following the District Court's order, Makowka filed this timely appeal.

II

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 1334, and the District Court reviewed the Bankruptcy Court's order under 28 U.S.C. § 158(a)(1). We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291.

Because the District Court sat as an appellate court reviewing the Bankruptcy Court's order, we exercise plenary review over its decision. *In re Continental Airlines*, 125 F.3d

6

120, 128 (3d Cir. 1997). Like the District Court, we review the Bankruptcy Court's legal determinations—such as the matter of statutory interpretation before us—de novo. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012).

## III

Under the UPCA, an "association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in a like manner as a mortgage on real estate." 68 Pa. Cons. Stat. § 5315(a). The lien does not exist in perpetuity, however, because the statute provides that "[a] lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable." *Id.* § 5315(e). Even if the lien is extinguished, "[n]othing in [Section 5315] shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure." *Id.* § 5315(f).

The question *sub judice* is whether the Association enforced its statutory lien against Makowka when it sued her in debt. The parties agree that Makowka's unpaid dues gave rise to a self-executing lien, and that the lien would have been extinguished by law absent any action by the Association within three years. But they disagree as to what actions qualify as "proceedings to enforce the lien" under subsection (e) of the statute. Makowka contends that there is only one way to enforce the lien: by filing a foreclosure complaint. If she is correct, she is subject only to the portion of the Association's lien for unpaid dues that has not been extinguished—namely, for the fees that came due after

7

September 12, 2008, three years before her Chapter 13 petition was filed. The Association, in contrast, argues that the UPCA permits multiple methods of enforcement under subsection (e). If that is so, its state court actions tolled the extinguishment period, and it holds a statutory lien for the total sum of the unpaid dues, plus late fees and interest.

A

We begin by noting that although the issue on appeal is a matter of state law, it has practical import in bankruptcy. As the Association correctly notes, an action to enforce the statutory lien through foreclosure generally has the same effect as a judgment in debt or contract, insofar as both enable an association to collect unpaid dues from a delinquent homeowner. In bankruptcy, however, the debtor may modify her obligations for certain categories of claims. In this context, the often inconsequential distinction between enforcement and alternate remedies under Section 5315 determines whether an association may retain an unavoidable lien on its resident's property or has a mere unsecured claim against her—the difference, as the parties here recognize, between potential payment and nonpayment. Given the significance of this state-law question in bankruptcy, we find it appropriate to resolve it here.

As the District Court noted, the Pennsylvania Supreme Court has not yet spoken to the issue presented in this case; therefore, "we must attempt to predict how that tribunal would rule." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). In doing so, we give due deference to the decisions of intermediate state courts. *See id.* (quoting *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995)). State appellate decisions, however, are not

controlling: "while we may not ignore the decision of an intermediate appellate court, we are free to reach a contrary result if, by analyzing other persuasive data, we predict that the State Supreme Court would hold otherwise." *Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990) (alterations, internal quotation marks, and citation omitted). Such persuasive data may include, *inter alia*, "what the Pennsylvania Supreme Court has said in related areas" and "the 'decisional law' of the Pennsylvania intermediate courts." *Id.* at 1369–70.

Our precedent, therefore, is clear that a federal court interpreting state law may discount state appellate decisions it finds flawed, if it predicts the state supreme court would reach a contrary result. Here, the District Court properly considered the relevant decisions from intermediate courts of equal authority: the Commonwealth Court's opinion in *Karr* and the Superior Court's opinion in *Hammer*. But it improperly concluded that *Hammer* had "binding effect" merely because the case "presents the latest and most definitive ruling by the intermediate courts" on the interpretation of Section 5315. *See* App. at 8. Because it was not, in fact, bound by a decision of the intermediate appellate court, the District Court gave *Hammer* too much weight, particularly in light of its own cogent critique of the Superior Court's analysis.

Consistent with the District Court's concerns, we decline to adopt *Hammer* because it is internally inconsistent, it conflicts with the text and structure of Section 5315, and it contravenes a fundamental precept of Pennsylvania law. We adhere instead to the more persuasive analysis presented by the Commonwealth Court in *Karr*. Accordingly, we predict that the Pennsylvania Supreme Court would hold that an

action in debt does not constitute a proper method to enforce a statutory lien under the UPCA, and that Makowka may avoid the Association's claims in bankruptcy.

B

In *Karr*, a homeowners association sought to collect unpaid dues from a resident by recording a second lien against his property, and the resident moved to strike this second lien. 866 A.2d at 448–50. The Commonwealth Court, following a close reading of Section 5315, held that the association's second lien was invalid. In her opinion for the Court, Judge Leavitt explained the distinction between "proceedings to enforce"—namely, a foreclosure action—and other remedies to collect. *Id.* at 452. She wrote that "[e]nforcement of an association lien is directly addressed in the Act" by subsection (a): "The association's lien may be foreclosed in a like manner as a mortgage on real estate." *Id.* at 451–52 (emphasis in original removed). This, however, did not preclude other remedies: "an association may also pursue *payment* of unpaid assessments by employing remedies less drastic than foreclosure. It is free, for example, to bring an action in debt or in contract to *collect* an assessment. Subsection (f) provides for such remedies. . . ." *Id.* at 452 (emphasis added).

Having distinguished methods to enforce the lien, which are described in subsection (a), and alternative remedies, which are preserved in subsection (f), the *Karr* court held that the association's second lien "did not advance [its] enforcement of its [statutory] lien by foreclosure in 'like manner as a mortgage on real estate.'" *Id.* (quoting 68 Pa. Cons. Stat. § 5315(a)). Rather, it found that an association seeking to enforce its lien had to "strictly follow[]" the

10

procedural requirements of Pennsylvania Rules of Civil Procedure 1141–50, which govern mortgage foreclosure actions. *Id.* Where the rules require a claimant to include information specific to a mortgage, the *Karr* court instructed, the association could substitute the UPCA's analogues: for example, the association could point to the deed giving rise to the UPCA lien (termed the "UPCA declaration") in lieu of the mortgage.[2] *Id.* Thus, "[t]he first step to enforcing an assessment lien is the filing of a foreclosure complaint." *Id.* at 453 (quoting Pa. Cons. Stat. § 5315(a)).

The Superior Court's decision in *Hammer* purported to adhere to *Karr*'s reasoning, but expanded without explanation an association's available methods of enforcement to include actions in debt and contract. There, the homeowners association attempted to execute a sheriff's sale on its resident's property to collect unpaid dues; the association argued that its perfected lien pursuant to the UPCA obviated the need to file a complaint. *Hammer*, 903 A.2d at 1237, 1239. In response, the resident moved to set aside the association's writ of execution because she had not received notice of the lien. *Id.* at 1237. The *Hammer* court found for the resident after phrasing the dispositive question thusly: "whether instigating a sheriff's sale perfects an already perfected assessment lien and substantially complies with the requirements of [the] UPCA to allow enforcement of [the association's] assessment lien." *Id.* at 1239 (internal quotation marks omitted).

---

[2] For this reason, irrespective of the validity of the Bankruptcy Court's observation that foreclosure would be an "odd procedural mechanism," we find it consistent with the language of the UPCA. *See* App. at 56.

The Superior Court answered in the negative. The association's failure to file suit, it held, violated the resident's due process rights: "institut[ing] suit by mortgage foreclosure or fil[ing] an action in debt or contract . . . provide[s] [the resident] with 'notice' of the debt . . . and/or a means to deny liability." *Id.* at 1241. The court also found support in Section 5315, borrowing heavily from the Commonwealth Court's analysis in *Karr*. At first, its reasoning mirrored the prior decision:

> Enforcement of an association lien is directly addressed by [the] UPCA, which states, as herein relevant: "*The association's lien may be foreclosed in a like manner as a mortgage on real estate.*" . . . [A]n association is not precluded from pursuing other avenues to obtain payment of assessments less drastic than foreclosure. For example, an association can avail itself of an action in debt or in contract to collect an assessment. Subsection (f) of the UPCA provides support for such alternative remedies . . . .

*Id.* at 1239–40 (citations omitted) (emphasis in original). Accordingly, *Hammer* concluded that the association's judicial sale did not constitute enforcement of its assessment lien "by foreclosure in 'like manner as a mortgage on real estate.'" *Id.* at 1240. Like *Karr*, *Hammer* initially distinguished the enforcement mechanism provided in subsection (a)—foreclosure—from the "other avenues to obtain payment of assessments" in subsection (f). *See id.*

Thereafter, *Hammer* took, in our view, a wrong turn by conflating the association's ability to enforce with its

12

remedies to collect:

> [E]xpanding upon the rationale of *Karr*, we hold that [the association] seeking a judicial sale as the vehicle to secure payment of its assessment lien did not equate with the approved *enforcement mechanism to collect an assessment lien* by an association's action in mortgage foreclosure, action in debt or contract.

*Id.* (emphasis added). The Superior Court then buttressed this conclusion with an improper insertion into *Karr*'s holding: "[t]he first step to enforcing an assessment is the filing of a foreclosure complaint[, action in debt or contract]." *Id.* in 1241 (alteration in original); *but cf. Karr*, 866 A.2d at 453 ("The first step to enforcing an assessment lien is the filing of a foreclosure complaint.").

C

In predicting whether the Pennsylvania Supreme Court would adopt *Karr* or the later decision in *Hammer*, we turn first to the language and structure of Section 5315. Under Pennsylvania law, statutory liens such as that provided by Section 5315 are construed strictly because they are an "extraordinary remedy" "which is more expeditious and advantageous . . . when compared to a breach of contract judgment." *Phila. Constr. Servcs., LLC v. Domb*, 903 A.2d 1262, 1267, 1268 (Pa. Super. Ct. 2006); *see also Murray v. Zemon*, 167 A.2d 253, 255 (Pa. 1960) (mechanics' liens are available only on such terms as the legislature sees fit to provide). Thus, "[t]he character, operation and extent of the lien must be ascertained from the terms of the statute which creates and defines it, and the lien will extend . . . only where

13

there has been at least a substantial compliance with all the statutory requirements." *United States v. Beaver Run Coal Co.*, 99 F.2d 610, 612 (3d Cir. 1938).

The Commonwealth Court's analysis in *Karr* comports with the text and structure of the statute at issue. Section 5315 draws a clear distinction between subsection (e)'s "proceedings to enforce" the statutory lien on the one hand and the pursuit of "[o]ther remedies" in subsection (f) on the other hand. Subsections (a) and (e) define the creation and expiration of the statutory lien as follows: "the association has a *lien* . . . [when] the assessment or fine becomes due"; this "*lien* may be foreclosed in a like manner as a mortgage on real estate"; and the "*lien* . . . is extinguished unless proceedings to enforce the *lien* are instituted within three years." 68 Pa. Cons. Stat. § 5315(a), (e) (emphasis added). As the Commonwealth Court noted in *Karr*, the statute explicitly provides for enforcement by "foreclos[ure] in a like manner as a mortgage on real estate"; thus, one may enforce the statutory lien by filing an action in foreclosure. *See* 866 A.2d at 452 (quoting 68 Pa. Cons. Stat. § 5315(a)).

In contrast to subsections (a) and (e), subsection (f) is concerned not with the lien itself but with the "*sums* for which subsection (a) creates a lien." 68 Pa. Cons. Stat. § 5315(f) (emphasis added). This shift in word choice demonstrates that actions in debt or contract provide an alternative recourse from the lien created by the provision, and do not constitute "proceedings to enforce the lien." In the words of the statute, they are the "[o]ther remedies" available at common law explicitly "preserved" by the statute. *Id.* As the *Karr* court reasoned, an association need not take drastic action to collect on its association dues, as remedies exist "in lieu of foreclosure": for example, the "actions or suits to

14

recover sums" and "taking a deed" described in subsection (f). 866 A.2d at 452 (quoting 68 Pa. Cons. Stat. § 5315(f)). But these methods of collection create only an *in personam* judgment against the debtor, and have no bearing on the *in rem* lien on the resident's property.[3]

In response, the Association notes that subsection (a) provides that the lien "*may* . . . foreclose[] in a like manner as a mortgage on real estate," arguing that this permissive language gives it multiple methods of enforcement. But this case does not require us to determine whether foreclosure is the exclusive means to enforce the lien, as Makowka contends. Rather, we must decide only whether actions in debt are a valid way to enforce the statutory lien—and the language of Section 5315(f), which explicitly defines actions in debt as an alternative to the lien created by the statute, suggests not.

---

[3] Because Section 5315 provides for enforcement by foreclosure, it is unsurprising that the preservation of alternative remedies in Section 5315 has a close analogue in the mortgage foreclosure context. As the District Court succinctly noted:

> [I]t appears to this Court that subsection (f) permits an action on the debt underlying the lien in the same way that a mortgagee may choose to proceed upon a promissory note given by a mortgagor to obtain a judgment *in personam* rather than initiate *in rem* mortgage foreclosure proceedings.

App. at 8.

Nor are we persuaded that other provisions of the UPCA militate in favor of a broader reading of "proceedings to enforce." The Association contends that the term should be liberally construed to give effect to Section 5114 of the UPCA, which states: "[t]he remedies provided by [the UPCA] shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." 68 Pa. Cons. Stat. § 5114(a). But Section 5114 is inapplicable to the enforcement of the statutory lien, speaking only as it does to an association's remedies for payment. Indeed, a restrictive interpretation of Section 5315(a), which creates the lien and defines its enforcement, has no effect on the availability of other methods of recovery, which have been explicitly preserved by subsection (f). Of course, we acknowledge that our reading of "proceedings to enforce" effectively precludes the Association from payment in this case. But a claimant's inability to collect in the special context of bankruptcy, which sometimes involves the impairment of creditors' rights, does not permit us to adopt a tortured interpretation of the provision giving rise to those rights.

We therefore hold that Section 5315, as explained by the Commonwealth Court's careful analysis in *Karr*, supports Makowka's argument that the Association's actions in debt did not enforce its statutory lien.

D

The Association urges that we follow the Superior Court's later decision in *Hammer* and find that actions in debt enforce the statutory lien. *See* 903 A.2d at 1240. We predict, however, that the Pennsylvania Supreme Court would not follow that approach.

16

As an initial matter, it is difficult to give credence to *Hammer*'s conclusion in light of the decision's sparse reasoning and internal inconsistency on the issue of enforcement. As discussed in section B, *supra*, *Hammer* purported to adopt the Commonwealth Court's reasoning in *Karr*, and like that case, initially distinguished the "enforcement" of the lien from other avenues to collect. *See id.* It then departed, relying on an improper insertion into *Karr*'s holding and thus tacking on new categories of potential enforcement methods. *See id.* (quoting *Karr* to state "[t]he first step to enforcing an assessment lien is the filing of a foreclosure complaint[, action in debt or contract]") (alterations in original). The decision also elided the distinction between enforcement methods and remedies to collect, noting that actions in debt constituted "approved enforcement mechanism[s] to collect an assessment lien." *Id.* These analytical tacks were made without explanation, and, as we explained in section C, *supra*, run contrary to the language and structure of Section 5315.

Furthermore, as the District Court correctly noted, *Hammer* "ignore[s] the well-established and fundamental distinction between proceedings *in rem* and those brought *in personam*." App. at 8; *see also Bank of Pa. v. G/N Enter.*, 463 A.2d 4, 6–7 (Pa. Super. Ct. 1983) (explaining the difference between *in rem* and *in personam* proceedings: a judgment *in rem* "creates a lien on the mortgaged premises . . . no matter who may be the owner at the time the judgment is entered"; a judgment *in personam* "does not bind strangers to the bond"). The Pennsylvania Supreme Court has held firm to this distinction. *See, e.g.*, *Mancine v. Concord-Liberty Sav. & Loan Ass'n*, 445 A.2d 744, 748 (Pa. 1982); *In re Craig's Estate*, 109 A.2d 190, 195 (Pa. 1954). Moreover, recent

17

opinions of the Superior Court itself have adhered to this traditional precept. *See, e.g.*, *U.S. Bank N.A. v. Mallory*, 982 A.2d 986, 992 n.3 (Pa. Super. Ct. 2009); *Levitt v. Patrick*, 976 A.2d 581, 591 (Pa. Super. Ct. 2009). Contrary to these numerous authorities, *Hammer* conflated an association's right to proceed *in rem* to enforce the statutory lien with its option to file *in personam* suits to collect judgments against the resident.

For these reasons, we find it appropriate to discount *Hammer*'s problematic statement about valid enforcement mechanisms.

IV

For the foregoing reasons, we predict that the Pennsylvania Supreme Court would follow *Karr*, not *Hammer*. Therefore, the District Court erred when it deemed itself bound by the latter decision. In our view, the Association did not enforce its statutory lien on Makowka's residence when it pursued actions in debt; therefore, any portion of the lien representing assessments due before September 12, 2008, has been extinguished. Accordingly, we will vacate the judgment of the District Court and remand the case for further proceedings consistent with this opinion.