NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1397
_____

SAMUEL BETO,
                              Appellant
v.

BOARD SECRETARY KIMBERLY A. BARKLEY; BOARD SECRETARY W.
CONWAY BUSHEY;
INTERSTATE DIRECTOR MARLIN FOULDS; CHAIRMAN WILLIAM F. WARD;
SUPERINTENDENT VINCE MOONEY; PAROLE AGENT KATHLEEN DEMAURO;
HEARING EXAMINER MICHAEL DUDA; PAROLE AGENT FRED CONJOUR;
AGENT JAMES DESOUSA
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-14-cv-02522)
District Judge: Honorable Thomas N. O'Neill, Jr.
_____

Argued:  March 15, 2017
_____

Before: GREENAWAY, JR. and SHWARTZ, *Circuit Judges*, and
SIMANDLE,* *Senior District Judge*.

(Filed: August 29, 2017)

_____

* The Honorable Jerome B. Simandle, Senior Judge of the United States District
Court for the District of New Jersey, sitting by designation.  Judge Simandle assumed
senior status on June 1, 2017.

Stephen O'Hanlon [ARGUED]
1500 John F. Kennedy Boulevard
Suite 1850
Two Penn Center Plaza
Philadelphia, PA 19102

*Counsel for Appellant*

John G. Knorr, III [ARGUED]
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

Claudia M. Tesoro
Sue A. Unger
Office of Attorney General of Pennsylvania
21 South 12th Street
Philadelphia, PA 19107

*Counsel for Appellees*

_____

OPINION[**]
_____

GREENAWAY, JR., *Circuit Judge*.

In this 42 U.S.C. § 1983 action, Samuel Beto, a former inmate, alleges that he was

illegally detained beyond the expiration of his maximum sentence date. The operative

complaint asserts two claims—one based in the Procedural Due Process Clause of the

Fourteenth Amendment and another based in the Eighth Amendment—against

Superintendent Vince Mooney of the Pennsylvania Department of Corrections and the

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

following employees of the Pennsylvania Board of Probation and Parole (the "Board"): Chairman William F. Ward, Board Secretary Kimberly A. Barkley, Board Secretary W. Conway Bushey, Interstate Director Marlin F. Foulds, Parole Agent Kathleen DeMauro, Hearing Examiner Michael Duda, Parole Agent Fred Conjour, and Parole Agent James DeSousa (collectively, "Defendants").

The District Court dismissed the Second Amended Complaint, finding that the claims asserted against certain defendants were time barred, and the Eighth Amendment claim against the remaining defendants was insufficiently pled. For the reasons that follow, we will affirm albeit on different grounds than the District Court ruled.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    Factual Background

In February 1989, a Pennsylvania state court convicted Beto of multiple state offenses and sentenced him to an aggregate term of two and one-half to ten years of incarceration and seven years of probation. The maximum sentence date for this sentence was October 3, 1998. In March 1992, Beto was arrested and convicted of another state offense. This conviction resulted in Beto being sentenced in Pennsylvania state court to an aggregate term of two and one-half to seven years of incarceration. The maximum sentence date for his second state sentence was July 23, 1998. The Pennsylvania Department of Corrections determined that of the two maximum sentence dates, October 3, 1998 was the "controlling maximum [sentence] date"—*i.e.*, the operative maximum sentence date for sentencing purposes.

On March 25, 1998, while on parole, Beto was indicted and arrested on federal criminal charges. That same day, Beto posted bail at his arraignment hearing before a federal magistrate judge.

The next day, Beto reported to his state parole agent, Conjour. According to Beto, Conjour arrested him even though there was "no prima facie case . . . in the context of [the] federal arrest." App. 250 ¶ 33. Beto maintains that the Board "had fourteen (14) days from this date[, March 26, 1998,] for a probable cause hearing and was required to have a [parole] revocation hearing within one-hundred-and-twenty (120) days." *Id.* But the Notice of Charges and a Probable Cause Hearing, a document the Board produced, indicates that Beto was not to receive a hearing establishing probable cause of a parole violation because probable cause was established at the federal arraignment.[1] *See* 37 Pa. Code § 71.3(1)(i) ("A parolee may be detained on a Board warrant pending disposition of a criminal charge" after "[a] district justice . . . conducted a preliminary hearing and concluded that there is a prima facie case against the parolee.").

Beto pled guilty to the federal charges on May 11, 1998. The criminal docket in the underlying federal criminal case reveals that Beto changed his plea multiple times before settling on "guilty." First, on March 26, 1998, he entered a plea of not guilty.

---

[1] We observe that there are two documents in the record titled "Notice of Charges and Hearing." One document is dated March 26, 1998, and refers to the hearing where the Board establishes probable cause of a parole violation. We will refer to this notice as "Notice of Charges and a Probable Cause Hearing." The other document is dated February 14, 2013, and refers to the parole revocation hearing. We will refer to this notice as "Notice of Charges and a Parole Revocation Hearing."

4

*United States v. Beto*, No. 98-131 (E.D. Pa. Mar. 26, 1998), ECF No. 17.  Then, on May 11, 1998, Beto changed his plea to guilty and the District Court accepted the plea.  *Beto*, No. 98-131 (E.D. Pa. May 11, 1998), ECF No. 56; App. 245 ¶ 13.  But on August 7, 1998, Beto moved *pro se* to withdraw his guilty plea.  *Beto*, No. 98-131 (E.D. Pa. Aug. 7, 1998), ECF No. 76.  The Criminal Arrest and Disposition Report reveals that Beto later withdrew his *pro se* motion on October 5, 1998.  Finally, on October 26, 1998, the District Court sentenced Beto "to 17 years [of] incarceration with the possibility of doing 15 years if [Beto] exhibited good behavior, followed by 3 years of supervised release."[2] App. 245 ¶ 17.

Beto remained in state custody from March 26, 1998 until October 21, 1998, without ever receiving a parole violation hearing.  On October 21, federal authorities transported Beto from SCI Graterford, a state correctional facility, to FCI Fairton, a federal correctional institution.[3]  In November 1998, Beto was sent to USP Lewisburg, a high-security federal penitentiary.[4]  Beto alleges he was transferred to a high-security penitentiary because the Board issued a detainer, signed by Foulds and Bushey.

---

[2] The Criminal Arrest and Disposition Report shows that October 26, 1998 was the "official verification date"—*i.e.*, the date a "parolee's supervising parole agent" receives a "direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted."  37 Pa. Code § 61.1.

[3] In his pleadings, Beto refers to the FCI as "Farrington."  We assume that this facility is FCI Fairton.

[4] Beto does not allege an exact date.

5

Meanwhile, Beto asserts that his wife contacted multiple state officials to tell them that she believed the state was illegally detaining her husband. The first instance occurred when Beto's wife "wrote directly" to Bushey on July 23, 1998 to inform him that Beto "was being kept beyond [his] maximum date."[5] App. 247 ¶ 27. At unspecified points in 1998 and 2000, Beto's wife "wrote directly to . . . Ward . . . informing [him] that [Beto] had not been given a timely parole revocation hearing, that [Beto's] sentence had maxed out, and that [Beto] was being illegally detained." App. 248 ¶ 29. In response, "Ward's office contacted Ms. Beto and said that [Beto's] 'case was referred to a Specialist to insure that the appropriate course of action is being taken.'" App. 248–49 ¶ 29.

Beto, while incarcerated in a federal penitentiary, petitioned for a writ of mandamus in the Commonwealth Court of Pennsylvania, arguing that the Board failed to conduct a timely parole revocation hearing. According to Beto, his mandamus petition put the Board on notice and "detailed the illegality of the detainer instigated by . . . Bushey and the failure to provide [Beto] a timely parole revocation hearing." App. 247 ¶ 27. But the Commonwealth Court found the challenge "premature," and observed that the Board "must hold a [parole] revocation hearing within 120 days of

_____

[5] The claim in the July 23, 1998 letter that Beto "was being kept beyond [his] maximum date" is either curious or flawed. The operative date for calculating Beto's maximum sentence is October 3, 1998, the date the Pennsylvania Department of Corrections determined was Beto's "controlling maximum [sentence] date."

6

official verification of his return to a state correctional facility." App. 201. The Supreme Court of Pennsylvania denied Beto's appeal.

Federal authorities released Beto from USP Lewisburg on March 1, 2013, after he served 15 years. On March 12, 2013, he returned to SCI Coal Township, a state correctional institution, because the Board issued a detainer.[6] On May 9, 2013, the Board conducted a parole revocation hearing where Beto "explained that he was being detained in excess of his maximum date and requested that he be released that day." App. 250 ¶ 32.

While Beto awaited the parole revocation hearing and its decision, he and his wife submitted numerous letters and grievances to, and communicated with, Barkley, DeMauro, DeSousa, and Mooney, informing them that Beto was being improperly held beyond his controlling maximum sentence date. The Board ultimately ordered Beto released on July 12, 2013.

## B. Procedural History

Beto brought a § 1983 action for damages on May 1, 2014 asserting an Eighth Amendment claim against all Defendants, a Fourteenth Amendment Procedural Due Process claim against Conjour, and state law claims for false arrest and false

---

[6] Neither the Second Amended Complaint nor the record clarifies where Beto was detained between March 1, 2013 and March 12, 2013. We will assume that Beto was in state custody during this time.

7

imprisonment against all Defendants.[7]  Beto brought the action against Defendants in their official capacities and individual capacities.  The Eighth Amendment claim asserted that the Board-imposed custody in 2013 was unlawful because Beto was incarcerated beyond his controlling maximum sentence date and that each Defendant was deliberately indifferent to his overdetainment.  This claim also asserted that the Board-issued detainer from 1998 led to Beto's placement in a "harsher, higher-level security custodial environment while in federal prison," because the detainer made him ineligible for release into a halfway house.  App. 246 ¶ 24.  The procedural due process claim asserted that Conjour, by revoking Beto's parole without any notice or a hearing and by issuing a state detainer, denied Beto procedural due process.

Defendants filed a motion to dismiss in response to Beto's initial complaint.  Their motion contained multiple grounds for dismissal including: (1) *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the entire complaint; (2) the statute of limitations barred claims against Conjour, Bushey, Foulds, and Ward; (3) the complaint failed to set forth facts to support a procedural due process claim; (4) the complaint failed to set forth facts to support an Eighth Amendment claim; (5) sovereign immunity barred the state law claims; and (6) the Eleventh Amendment barred claims against Defendants in their official capacities.  The District Court dismissed Beto's initial complaint, resting its decision on sovereign immunity, the Eleventh Amendment, the statute of limitations, and the

---

[7] The initial complaint also contained allegations against Supervisor Carl Christian and Supervisor David M. Dettinburn, but the Second Amended Complaint did not.

8

insufficient pleading of deliberate indifference on the Eighth Amendment claim. But the District Court granted Beto leave to amend, allowing him to assert claims against Defendants in their individual capacities only; to plead facts sufficient to show Defendants' personal involvement in the alleged violation of his Eighth Amendment rights; and to assert claims against Conjour, Bushey, and Ward to the extent that Beto could "plead facts sufficient to show that his claims are not barred by the statute of limitations." App. 142.[8]

Beto filed an Amended Complaint, but the District Court dismissed it without an opinion because Beto still brought claims against the Defendants in their official capacities. Beto then filed a Second Amended Complaint with additional factual allegations. Defendants moved to dismiss the Second Amended Complaint, reasserting most of their previous arguments.

The District Court granted Defendants' motion on two grounds: (1) the claims against Conjour, Bushey, and Ward were time barred; and (2) the Second Amended Complaint failed to state a plausible Eighth Amendment claim against the remaining Defendants.[9] This timely appeal followed.

---

[8] The District Court also granted leave to amend Beto's state law claims but he removed them from the Second Amended Complaint.

[9] The District Court did not address the sufficiency of pleadings of the procedural due process claim because Beto brought this claim against Conjour only.

9

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We exercise plenary review over a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6)." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). "[W]e may affirm on any grounds supported by the record." *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 n.4 (3d Cir. 2015). "We accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." *Curry v. Yachera*, 835 F.3d 373, 377 (3d Cir. 2016). We may also consider "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted) (internal quotations marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face." *Fleisher*, 679 F.3d at 120 (internal quotation marks omitted).

## III. ANALYSIS

Because Beto's Eighth Amendment overdetainment claim is partially premised on the deprivation of procedural due process, we will first address the procedural due process claim and then address the Eighth Amendment claim.

10

## A. Procedural Due Process Analysis

Beto asserts his procedural due process claim against his state parole agent, Conjour. Rather than reject this claim on statute of limitations grounds, we will address its merits.[10]

Beto asserts three separate violations against Conjour: (1) failure to provide a probable cause hearing within fourteen days of March 26, 1998 when Beto received the Notice of Charges and a Probable Cause Hearing; (2) failure to provide a parole revocation hearing within 120 days of receipt of the Notice of Charges and a Probable Cause Hearing; and (3) failure to maintain proper records despite being told that Beto was illegally detained without a parole revocation hearing and a detainer that was placed on Beto after his controlling maximum sentence date. Even though the Second Amended Complaint does not cite to any authority in alleging that Conjour violated Beto's procedural due process rights, we conclude Beto's claim is premised on Conjour running afoul of 37 Pa. Code §§ 71.2 and 71.4.

---

[10] We assume for the sake of argument that Beto's procedural due process claim accrued in 2013, when the Board invoked Beto's detainer. *See Moody v. Daggett*, 429 U.S. 78, 87 (1976) ("[E]xecution of the [parole violator] warrant and custody under that warrant [are] the operative event triggering any loss of liberty attendant upon parole revocation."). Although the District Court did not reach the question of whether Conjour denied Beto procedural due process, we believe that Beto's claim falls short because the facts alleged fail to state a claim for a violation of procedural due process.

Additionally, because we assume Beto's procedural due process claim is not time barred, we need not address Beto's continuing violation doctrine and discovery rule arguments.

11

### 1. Beto Had No Right to a Probable Cause Hearing Under 37 Pa. Code § 71.2

Section 71.2 provides a parolee with a "preliminary hearing . . . within 14 days" from when the parolee "has been charged with a *technical violation*." 37 Pa. Code § 71.2 (emphasis added). Beto does not argue that the hearing § 71.2 provides is constitutionally insufficient; thus, we need not decide that issue.

We observe that § 71.2 applies to parolees charged with committing a technical violation of parole. Meanwhile, § 71.3 applies to parolees charged with committing a new criminal offense.[11] The Notice of Charges and a Probable Cause Hearing shows that Beto's purported parole violation was committing a new criminal offense, not committing a technical violation. Thus, we conclude that Conjour did not run afoul of § 71.2 because Beto had no right to the probable cause hearing § 71.2 provides.

---

[11] Section 71.3 sets forth the procedures "if a parolee . . . has been charged with a new criminal offense." In relevant part, "[a] parolee may be detained on a Board warrant pending disposition of a criminal charge" so long as "[a] district justice . . . conducted a preliminary hearing and concluded that there is a prima facie case against the parolee." *Id.* § 71.3(1)(i).

Here, the Notice of Charges and a Probable Cause Hearing notes that a federal magistrate judge conducted an arraignment hearing where a federal grand jury indictment established probable cause. Thus, we conclude there was compliance with § 71.3. Moreover, Beto does not argue that the hearing § 71.3 provides is constitutionally insufficient; thus, we need not decide that issue.

12

## 2. Beto Received a Timely Parole Revocation Hearing Under 37 Pa. Code § 71.4

We turn next to the timing of a parole revocation hearing. Although committing a crime constitutes a parole violation, the lodging of criminal charges does not render a parolee a parole violator; the parolee must be "convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record." 61 Pa. Cons. Stat. § 6138(a)(1).

Assuming the parolee is in state custody, the Board shall provide a "[parole] revocation hearing . . . within 120 days from the date the Board received *official verification* of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa. Code § 71.4(1) (emphasis added). "Official verification" means "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." *Id.* § 61.1. But if the parolee is "confined outside the jurisdiction of the [Pennsylvania] Department of Corrections, such as . . . confinement in a Federal correctional institution," the Board shall provide a parole revocation hearing "within 120 days of the official verification of the return of the parolee to a State correctional facility." *Id.* § 71.4(1)(i).

13

Here, Beto argues that he should have received a parole revocation hearing within 120 days of May 11, 1998, when he originally pled guilty to the federal charges.[12] Even though Beto first pled guilty on May 11, 1998, uncertainty surrounded his plea status. After moving to withdraw his guilty plea and then withdrawing that motion, the District Court sentenced Beto on October 26, 1998. Given the unusual circumstances, it is appropriate to treat October 26, 1998—the date the District Court sentenced Beto and definitively removed any uncertainty surrounding Beto's guilty plea—as the official verification date.[13]

If Beto were in state custody, the 120-day clock would start on this date. But on October 26, 1998, Beto was in custody at FCI Fairton, a federal correctional institution, before serving his sentence in USP Lewisburg, a federal penitentiary. Beto did not return to state custody until March 1, 2013. This circumstance requires that we start the 120-day clock on March 1, 2013. And we observe that the Board held Beto's parole revocation hearing 69 days later on May 9, 2013. Thus, Beto received a timely parole

---

[12] One could read both Beto's appellate brief and his complaint as arguing that Beto should have received a parole revocation hearing within 120 days of March 26, 1998, when Conjour gave Beto Notice of Charges and a Probable Cause Hearing as to the federal crimes. The problem with this argument is that no judge or jury had convicted Beto of the federal crimes by that date; thus, he was not a parole violator.

[13] Two separate Board documents support this approach: the Criminal Arrest and Disposition Report showing that "10/26/1998" was the "verification date" and the Notice of Charges and a Parole Revocation Hearing showing that "10/26/1998" was the "date of conviction." App. 108; App. 110. Furthermore, the Commonwealth Court's response to Beto's challenge as "premature" gives credence to treating October 26, 1998 as the official verification date. App. 201.

14

revocation hearing. Accordingly, we hold that Beto failed to state a procedural due process claim upon which relief can be granted.

## B. Eighth Amendment Analysis

We have held that the detention of an inmate "beyond the termination of his sentence . . . violate[s] the [E]ighth [A]mendment's proscription against cruel and unusual punishment" if the "incarceration [is] without penological justification." *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). To recover for overdetention in violation of the Eighth Amendment, a plaintiff must show:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.

*Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010).

Beto argues that his state detainment in 2013 was unwarranted and that Defendants' deliberate indifference caused this unwarranted detention. This argument rests on two assumptions. The first assumption: any parole revocation hearing after September 8, 1998—120 days after he first pled guilty to the federal charges—would be untimely. Given our earlier procedural due process analysis, we know this not to be the case. The second assumption: the Board lost jurisdiction to detain Beto until his parole revocation hearing—and potentially, to recommit Beto to a state correctional facility—after Beto's controlling maximum sentence date lapsed. We reject this assumption, too.

15

A parolee "is in the legal custody of the Board until [he] completes the service of his maximum sentence or until the Board recommits [him] as a parole violator." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 303 (Pa. 2003) (citing 37 Pa. Code § 63.2). Pennsylvania law provides that if a parolee, "during the period of parole . . . commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record," the Board has discretion to recommit the parolee as a parole violator. 61 Pa. Cons. Stat. § 6138(a)(1). The Board may order the parolee recommitted "to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted," unless the Board, in its discretion, allows credit for "street time." *Id.* § 6138(a)(2); *see also* 37 Pa. Code § 63.3 ("If the parolee violates the conditions of parole, at a time during his period on parole, the Board may cause his detention or return to a correctional institution.").

The Pennsylvania Commonwealth Court has interpreted this provision to mean that the Board retains jurisdiction over the parolee beyond the expiration of the maximum sentence (referring to the original conviction) so long as the crime that leads to the second conviction occurred while the parolee was on parole for the original conviction.[14]

---

[14] We observe that the Pennsylvania Supreme Court has not yet spoken to the issue, thus, "we must attempt to predict how that tribunal would rule." *See In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014) (internal quotation marks omitted). "In doing so, we give due deference to the decisions" of the Pennsylvania Commonwealth Court. *Id.*

16

*See, e.g.*, *Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 73 (Pa. Commw. Ct. 2013) ("It is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual is on parole."); *Reavis v. Pa. Bd. of Prob. & Parole*, 909 A.2d 28, 34 (Pa. Commw. Ct. 2006) (observing that "the Board retains jurisdiction to recommit a parolee convicted of a crime while on parole even after the expiration of a maximum sentence").

It is therefore of no consequence that Beto's federal conviction and parole revocation hearing occurred after October 3, 1998, his controlling maximum sentence date, because the crimes that led to his federal conviction occurred before that date.

In sum, we conclude that the Board retained jurisdiction to recommit Beto as a parole violator in 2013, so it cannot be said that the Defendants unlawfully detained Beto during that time. Accordingly, we hold that Beto failed to state an Eighth Amendment claim upon which relief can be granted.

## IV. CONCLUSION

For these reasons, we will affirm the District Court's judgment.