# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James John, Jr. and Jill John, his wife   :
  :
      v.                    :  No. 566 C.D. 2023
  :  Submitted: June 6, 2024
Heritage Hills Association, a       :
Pennsylvania Corporation,        :
               Appellant   :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                  FILED: July 19, 2024

Heritage Hills Association, a Pennsylvania Corporation (Association), appeals the order dated May 18, 2023, by the Court of Common Pleas of Fayette County (Common Pleas), which granted summary judgment in favor of James John, Jr. and Jill John, his wife (collectively, the Johns). The Johns are residents of the Heritage Hills neighborhood in South Union Township, Fayette County, and members of the Association. Common Pleas concluded the Johns did not violate the Association's declaration of covenants (Declaration) when they constructed a water slide and masonry platform with steps (collectively, Waterslide) on their property. After careful review, we affirm.

# BACKGROUND

The Johns filed a complaint for declaratory judgment against the Association on May 3, 2019. The Johns averred they received approval from the Association in 2017 to construct an in-ground swimming pool on their property. The Johns constructed the swimming pool and the Waterslide. The Johns averred they received a notification from the Association after construction, indicating the Waterslide was a "structure" separate from the swimming pool under the Declaration. As a result, the Association demanded the Johns remove the Waterslide and request separate approval for its installation. The Johns averred the Association sought to impose a $25 fine for each day the Waterslide remained on the property, without providing them an opportunity to be heard. Further, the Johns averred the Association did not enforce the Declaration consistently and had allowed other homeowners "to erect and/or construct things specifically prohibited" under the Declaration. Reproduced Record (R.R.) at 7a. The Johns requested a declaration that the Waterslide was not a "structure" separate from the swimming pool, and that the Association could not impose a fine without providing them notice and the opportunity to be heard.

The Association filed an answer, new matter, and counterclaim on June 5, 2019. According to the Association, the Johns requested approval to construct their swimming pool and a fence but did not request approval for the Waterslide, which was a separate "structure" and violated the Declaration's 15-foot setback.[1] The Association averred it received a complaint about the Waterslide from neighbors, who described it as an annoyance and nuisance that affects their privacy and reduces their property value. The Association challenged the Johns' assertion they did not receive notice and the opportunity to be heard, averring that "[e]xtensive

---

[1] The record contains drawings the Johns submitted when requesting approval for their swimming pool, which do not appear to depict the Waterslide. *See, e.g.*, R.R. at 34a, 48a, 52a, 55a, 58a.

2

communications" occurred between the Association, the Johns, and the Johns' attorney. R.R. at 17a-18a. The Association requested judgment in its favor on the Johns' claim for declaratory judgment and an award of fines against the Johns.[2]

On February 9, 2023, the Johns filed a motion for summary judgment. The Johns argued they received approval for their swimming pool and did not require separate approval for the Waterslide. The Johns cited the deposition testimony of the Association's President, Rick Rafail (Rafail), for the proposition that the Association was aware of the Waterslide during its construction and did not object. The Johns alleged the Association generally did not require separate approval for swimming pool slides. The Association filed a reply on March 10, 2023. The Association argued, among other things, that the Johns misconstrued Rafail's testimony. The Association also argued the Johns' motion was procedurally improper because discovery was incomplete. The Association alleged it asked to depose the Johns, but the Johns filed their motion before the depositions could occur.

By order dated May 18, 2023, Common Pleas granted the Johns' motion for summary judgment, entered declaratory judgment in favor of the Johns, and dismissed the Association's counterclaim. Common Pleas concluded the Waterslide was not a "building" as addressed in the Declaration. R.R. at 484a. Further, Common Pleas concluded the Association's approval of the Johns' swimming pool included approval of "accessories thereto," like the Waterslide. *Id.* Common Pleas explained the Association had only an informal process for approving construction projects and, "at best, selectively enforced violations of the Declaration as to different homeowners at what appears to be the sole discretion of the governing

---

[2] The Johns filed a reply to the Association's new matter, answer to the counterclaim, and new matter to the counterclaim on June 28, 2019. The Association filed a reply to the Johns' new matter to its counterclaim on August 16, 2019.

board." *Id.* Regarding the Association's contention that discovery was incomplete, Common Pleas cited Fayette County Local Rule of Civil Procedure 212.1(a), which provides a 240-day deadline to conduct discovery, "except by order of Court upon good cause shown." F.C.R. 212.1(a). Common Pleas explained the case had been ongoing long past the 240-day deadline, the Association never filed a motion to extend discovery, and no court order had extended discovery. R.R. at 481a. Thus, Common Pleas concluded the Johns' motion was ripe for its consideration.

The Association timely appealed to this Court. On appeal, the Association challenges Common Pleas' interpretation of the Declaration and argues genuine issues of material fact exist that preclude the entry of summary judgment. The Association argues Common Pleas should not have granted the Johns' motion for summary judgment without allowing it to depose the Johns and improperly dismissed its counterclaim for an award of fines.

## DISCUSSION

This Court reviews an order granting summary judgment for an error of law or abuse of discretion. *Balentine v. Chester Water Auth.*, 191 A.3d 799, 803 n.3 (Pa. 2018) (citing *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017)). Summary judgment is appropriate "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Sellers v. Twp. of Abington*, 106 A.3d 679, 684 (Pa. 2014) (quoting *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010)). We consider the record, including "all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Moon v.*

4

*Dauphin Cnty.*, 129 A.3d 16, 19 (Pa. Cmwlth. 2015) (quoting *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009)).

A homeowners' association declaration is equivalent to a contract between the association and its members. *London Towne Homeowners Ass'n v. Karr*, 866 A.2d 447, 454 n.16 (Pa. Cmwlth. 2004); *Southpointe Golf Club, Inc. v. Southpointe Prop. Owners' Ass'n, Inc.* (Pa. Cmwlth., No. 1420 C.D. 2019, filed May 7, 2021), slip op. at 13-14 (citing *Hilltop Summit Condo. Ass'n v. Hope* (Pa. Cmwlth., No. 4 C.D. 2014, filed July 10, 2014), slip op. at 15-16). Accordingly, we interpret a declaration using contract principles. *See Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1196 (Pa. Cmwlth. 2015) When interpreting a contract, our goal is to ascertain and give effect to the parties' intent. *LJL Transp.*, 962 A.2d at 647 (citing *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005)). "When the words of [a contract] are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning." *Id.* (citations omitted).

The Association contends Common Pleas overlooked the existence of genuine issues of material fact, which preclude the entry of summary judgment, and improperly dismissed its counterclaim for an award of fines. These issues of material fact include whether other homeowners within the Association had permission to erect structures on their properties, whether the Johns had verbal permission to construct the Waterslide, and whether the Waterslide was located less than 15 feet away from the Johns' property line. Association's Br. at 19-28. The Association argues the Declaration prohibits nuisances and does not provide for accessory structures. *Id.* at 17, 28-29, 34-37, 42-43. The Association also characterizes part of the Waterslide as a "wall" constructed in violation of the

Declaration. *Id.* at 16-19, 26, 35-36, 44. The Association challenges Common Pleas' assertion that it engaged in selective enforcement, arguing such a conclusion "would open the door for any owner within a homeowners['] association to argue they are not responsible for violations of the governing documents simply because they could cite to others who were not in compliance." *Id.* at 17, 40-41, 45. Finally, the Association argues it was unable to complete discovery because the Johns filed their motion for summary judgment before their depositions could be scheduled. *Id.* at 16, 30-31

As summarized above, the Waterslide includes masonry steps leading to a platform and a slide from the platform to the Johns' swimming pool. *See* R.R. at 245a-53a. The Declaration does not include provisions addressing in-ground swimming pools or waterslides. Moreover, the Declaration includes provisions addressing "buildings" and "structures," but it does not define either term. The following provisions of the Declaration are relevant to our analysis:

1. LAND USE AND BUILDING TYPE:

All lots . . . shall be used exclusively for residential purposes. No structures shall be erected, altered, placed or replaced or permitted to remain on any lot other than one detached single family dwelling, not to exceed two and one-half stories in height and a private garage which shall be integral or attached to the dwelling.

2. DWELLING SIZE:

. . . .

No building shall be erected upon any lot which shall have an exterior finish of concrete block, cinder block or tile above the grade line.

3. BUILDING LOCATION:

6

No building shall be located on any lot nearer to the front lot line or nearer to the side street line the minimum set back line . . . . No building shall be erected or located nearer than fifteen (15) feet to any side lot line which is not a street boundary. However, if any owner should own two or more contiguous lots . . . said lots may be treated collectively as one building lot by the owner thereof. In such event, the owner may locate his dwelling thereon without regard to the division line or lines between the lots owned by said owner; provided, however, in all events, the owner must comply with the restrictions of this paragraph as they apply to any of the owner's boundary lines which border on a street or which border on a lot not owned by him.

. . . .

14. ARCHITECTURAL CONTROL:

No building shall be erected, placed or altered on any building lot . . . until the building plans, specifications and plot plans showing the location of such building have been approved in writing (i) as to conformity and harmony of external design with existing structures, including construction materials, and (ii) as to the building with respect to topography and finished ground elevation . . . .

. . . .

16. FENCES:

No fence, gate, or wall of any description shall be erected without first obtaining the approval in writing . . . as to the location, height and design thereof.

17. SWIMMING POOLS:

No above ground swimming pools are permitted on any lot.

R.R. at 356a-59a.[3]

---

[3] The Declaration forbids homeowners from doing anything "on any lot which may be or become an annoyance or nuisance to the neighborhood." R.R. at 357a. A private nuisance exists if a person invades another's private use and enjoyment of land, either "when the interference is intentional and unreasonable or the result of negligent, reckless or abnormally dangerous conduct." **(Footnote continued on next page…)**

The Waterslide is not a "building" under any reasonable construction of that term. A "building" is "a structure with walls and a roof, esp[ecially] a permanent structure." Black's Law Dictionary 242 (11th ed. 2019). No part of the Waterslide includes a roof or walls; nor can the steps and platform leading to the slide be construed as a "wall," contrary to the Association's proposal. The steps and platform do not provide "privacy, security, or enclosure" and, as a result, do not resemble a wall in appearance or purpose. *See id.* at 1896.

Nonetheless, the Declaration specifically prohibits "structures" other than "one detached single family dwelling . . . and a private garage." R.R. at 356a. The term "structure" is much broader than "building" and includes "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Black's Law Dictionary 1721 (11th ed. 2019). The Waterslide is an artificial construction on the Johns' property and, accordingly, is a structure that the Declaration prohibits.

Although the Declaration prohibits structures other than single-family homes and garages, it is undisputed the Association allows homeowners to place other types of structures on their properties, like swimming pools. The Declaration expressly prohibits above-ground swimming pools, R.R. at 63a, which suggests in-ground

---

*Carnahan v. Slippery Rock Twp. Zoning Hearing Bd.*, 305 A.3d 211, 224 (Pa. Cmwlth. 2023) (citing *Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 905 (Pa. Cmwlth. 2007)). The Association does not address these requirements or otherwise explain how the Waterslide constitutes a nuisance, other than emphasizing its location near the Johns' property line and purported effect on privacy. *See* Association's Br. at 7-8, 16, 28-29.

swimming pools are permissible. However, no requirements or limitations for approving in-ground swimming pools appear in the Declaration.[4]

It is important to add that the Association's approval process is highly informal and discretionary. In his deposition, Rafail testified the Association sends homeowners an e-mail "giving them an outline of what they needed to submit. And we're not that formal. I mean, you can do a hand drawing and that's okay . . . the real issue is the side setbacks . . . ." R.R. at 166a. Rafail testified it was "probably" his job as President of the Association to approve submissions, but "[o]n some occasions we've had the secretary do it and we had other people as president other than me." *Id.* at 183a. When asked what he would do if a homeowner installed a 10-foot-tall diving board, Rafail did not identify a specific rule that would govern that situation but explained he would present it to the Association "and we would discuss it. When you get a majority, that's how we would rule." *Id.* at 169a-71a.

We agree with Common Pleas, therefore, that the Johns did not violate any terms of the Declaration. The Johns sought approval to construct a swimming pool through the Association's informal process, and the Association provided its approval. The Johns constructed the Waterslide in connection with the approved swimming pool project. Even accepting that the Johns did not request permission to

---

[4] This distinguishes the case from *Weber v. Board of Directors of Laurel Oaks Association* (Pa. Cmwlth., No. 2051 C.D. 2016, filed November 13, 2017). In *Weber*, we affirmed the trial court's decision that a homeowners' association had authority to require removal of a mailbox "stylized to resemble the Disney character Tigger." *Id.*, slip op. at 1-2. The association's governing documents required permission to install any "structure" on a lot or make any change to a home's exterior. *Id.*, slip op. at 2, 8-10, 15-21. In addition, the documents required that the style of any changes must match the existing home and be compatible with the "architectural design character of the community." *Id.* The governing documents in *Weber* were significantly more detailed than the Declaration at issue here. We also observe the mailbox in *Weber* was not installed in connection with a separate, approved project.

9

construct the Waterslide specifically, they did not violate the Declaration, which governs "buildings" and does not address this situation, even in general terms.[5]

## CONCLUSION

For the foregoing reasons, we agree with Common Pleas that no genuine issues of material fact exist in this case, and the Johns are entitled to judgment as a matter of law.  We affirm Common Pleas' order dated May 18, 2023, granting the Johns' motion for summary judgment, entering declaratory judgment in favor of the Johns, and dismissing the Association's counterclaim.

_____
STACY WALLACE, Judge

---

[5] We find no merit to the Association's argument that Common Pleas improperly granted summary judgment before discovery was complete.  Our Supreme Court has observed that parties are not entitled to "unlimited discovery" before the entry of summary judgment. *Manzetti v. Mercy Hosp. of Pittsburgh*, 776 A.2d 938, 950 (Pa. 2001).  A court may enter summary judgment "where additional discovery would not aid in the establishment of any material fact." *Id.* at 950-51 (citing Pa.R.Civ.P. 1035.2(1)).  Given our conclusion that the Declaration does not address this situation, taking the Johns' depositions would not aid in establishing material facts.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James John, Jr. and Jill John, his wife　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　v.　　　　　　　　　　: No.　566 C.D. 2023
　　　　　　　　　　　　　　　　　　　　　:
Heritage Hills Association, a　　　　　　:
Pennsylvania Corporation,　　　　　　　:
　　　　　　　　　　　　Appellant　:

# **O R D E R**

**AND NOW**, this 19th day of July 2024, the order dated May 18, 2023, by the Court of Common Pleas of Fayette County, is **AFFIRMED**.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　STACY WALLACE, Judge